# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### APRIL SESSION, 1997

FILED

July 25, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

STATE OF TENNESSEE,  )
         )
  Appellee    )  No. 02C01-9604-CC-00134
         )
         )  DYER COUNTY
vs.        )
         )  Hon. J. STEVEN STAFFORD, Judge
JACK MAXIE WELCH,  )
         )  (Second Degree Murder)
  Appellant   )

For the Appellant:

**G. STEPHEN DAVIS**
District Public Defender
208 N. Mill Avenue
P. O. Box 742
Dyersburg, TN  38025-0742

For the Appellee:

**CHARLES W. BURSON**
Attorney General and Reporter

**DEBORAH A. TULLIS**
Assistant Attorney General
Criminal Justice Division
450 James Robertson Parkway
Nashville, TN 37243-0493

**C. PHILLIP BIVENS**
District Attorney General
P. O. Box E
Dyersburg, TN  38024

**CHARLES S. KELLY**
Special Prosecutor
P. O. Box 507
Dyersburg, TN 38024

OPINION FILED: _____

AFFIRMED

**David G. Hayes**
Judge

**OPINION**

The appellant, Jack Maxie Welch, was convicted at a jury trial of second degree murder and was sentenced to twenty years imprisonment by the Dyer County Circuit Court. In this appeal, as of right, he challenges (1) the sufficiency of the convicting evidence and (2) the length of the sentence imposed.

After reviewing the record, we find these issues to be without merit. Accordingly, the judgment and sentence entered by the trial court are affirmed.

**I. Background**

The State's proof at trial revealed that, on January 29, 1995, the body of David Crawford was discovered in the passenger's side seat of a vehicle in Dyersburg. The vehicle was registered to the victim's mother. The autopsy performed on January 30 showed the cause of death to be internal bleeding resulting from "tears of certain tissues inside the abdominal cavity . . . [caused by] blunt trauma to the abdomen, and that death was not instantaneous." The deceased's blood alcohol content at the time of death was .55 percent ethyl alcohol.[1]

The police investigation established that the victim was last seen in the company of the appellant. The two were long-time friends and drinking companions. Friends characterized the relationship of the appellant and the victim as "drinking buddies . . . they drank together, they stayed together a lot, they fought together." Upon questioning by law enforcement agents, the

---

[1]The medical examiner testified that a person is at a risk of dying from alcohol consumption with a blood alcohol level of .35 percent.

appellant admitted that he killed his friend, David Crawford.  In his statement to the police, he related that Crawford had come to his house on January 28, 1995, and the two drank a liter of vodka.  They then purchased more vodka and went to Crawford's residence where they continued to drink.  Eventually, the two returned to the appellant's residence.  On their return to the appellant's residence, they picked up C.C. Walker, who was staying with the appellant.  Shortly after the threesome's arrival at the appellant's residence, Walker left.  Around 9:30 p.m., an argument ensued after the appellant asked Crawford why he lied to some girls about being a "Vietnam Vet."   The appellant explained the events leading to the victim's death as follows:

> David [Crawford] began to bad mouth vets, and Vietnam, and I told him his body wasn't worth the uniform of a vet.[2]  David got real vocal and obnoxious.  David jumped up from the love seat in my house and swung at me.  We began to fight.  At first, I blocked and slapped him in the face and the fight got worse.  I remember him on the floor trying to get up and I kicked him in the sides.  I kicked him several times in the heat of the moment.  Then he quit fighting and struggling and laid on the floor, gurgling noises and blood.  I couldn't get him up.  I was so drunk, I didn't know if he had a pulse. . . .   I didn't plan on killing him or to harm him.  I'm just an alcoholic who's lost his temper with an obnoxious alcoholic.

Shortly thereafter, the appellant contacted C.C. Walker and informed him that he had hurt Crawford.  When Walker arrived, he observed Crawford's body on the floor.  Crawford's pants were down past his knees and his buttocks were exposed.  His shirt was missing and he was hog-tied.[3]  The appellant explained that he had tied the victim up and pulled his pants down "to keep him from hurting him [the appellant] and to keep him from running away."  He informed Walker that "he was tired of. . .him talking about Vietnam so he kicked his ass."  He added that he wanted "Crawford out of his house."  The two men then placed

---

[2]The record indicates that the appellant was honorably discharged from the Army in November, 1969, after thirty-two months of active duty, including one year in Vietnam.  The appellant testified that he has been hospitalized and received treatment for his alcohol abuse and other service related disabilities on numerous occasions.

[3]"The rope was around his neck, wrapped around his feet and tied up -- I think it was around his hands."

Crawford's body in the passenger seat of his car. The appellant returned inside the house, where he mopped Crawford's blood from the living room floor. After completing this task, the appellant went to a friend's house, where he continued to drink beer until early the next morning. Meanwhile, Walker drove Crawford's car to the location where it was discovered the next day, approximately two and one-half blocks from the victim's home.[4]

## II. Sufficiency of Evidence

In his first issue, the appellant contends that the evidence is insufficient to support a conviction for second degree murder. In support of this contention, he argues that the State failed to prove malice beyond a reasonable doubt. The appellant argues "at worst [the facts present] a case of voluntary manslaughter." The jury was charged on both offenses by the trial court.

A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). It is the appellate court's duty to affirm the conviction if the evidence, viewed under these standards, was sufficient for any rational trier of fact to have found the essential elements of the offenses beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 317, 99 S.Ct.

---

[4]C.C. Walker pled guilty as an accessory after the fact to the homicide of David Crawford.

4

2781, 2789 (1979); State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); Tenn. R. App. P. 13(e).

Initially, we note that, with the adoption of the 1989 Criminal Code, effective November 1, 1989, "malice" is no longer an element of second degree murder. Second degree murder is defined as "a knowing killing of another." Tenn. Code Ann. § 39-13-210(a)(1) (1991 Supp.). A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result. Tenn. Code Ann. § 39-11-106(a)(20). "Whether the acts constitute a "knowing killing" (second degree murder) or a killing due to "adequate provocation" (voluntary manslaughter) is a question for the jury." State v. Johnson, 909 S.W.2d 461, 464 (Tenn. Crim. App.), perm. to appeal denied, (Tenn. 1995). The proof at trial established that the appellant repeatedly kicked the victim as he laid virtually defenseless on the floor. His intent was corroborated by his boast to friends that "I kicked his ass" and "[I] kicked the crap out of him." These facts are sufficient for a rational trier of fact to conclude that the appellant was consciously aware of the nature of his conduct and that the conduct, i.e. repeated kicks to the abdomen, was reasonably certain to cause death. Accordingly, we find the evidence more than sufficient to support his conviction for second degree murder. Having concluded that the convicting evidence is sufficient to establish murder two, we find it unnecessary to address the appellant's contentions concerning voluntary manslaughter. This issue is without merit.

### III. Length of Sentence Imposed

In his final issue, the appellant argues that the twenty year sentence imposed by the trial court is excessive. Initially, we note that the appellant does

5

not contest the propriety of the four enhancement and two mitigating factors applied by the trial court.[5][6]  Rather, he only disputes the weight given to these factors by the trial court in determining the length of the sentence.

Review, by this court, of the length, range, or manner of service of a sentence is *de novo* with a presumption that the determination made by the trial court is correct.  Tenn. Code Ann. § 40-35-301(d)(1990).  This presumption only applies, however, if the record demonstrates that the trial court properly considered relevant sentencing principles.  State v. Ashby, 823 S.W.2d 166,1 69 (Tenn. 1991).  In the case before us, the trial court correctly applied sentencing principles, thus, the presumption applies.  Additionally,  the appellant bears the burden of demonstrating that the sentence imposed was improper.  Sentencing Commission Comments, Tenn. Code Ann. § 40-35-401(d) (1990).

The appellant was convicted, as a range I offender, of second degree murder, a class A felony.  see  Tenn. Code Ann. § 39-13-210.  Thus, the applicable sentencing range is "not less than fifteen (15) nor more than twenty-

---

[5]At the conclusion of the sentencing hearing, the trial court found the following enhancement factors supported by the proof:

> (1)  The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range;

> (5)  The defendant treated or allowed a victim to be treated with exceptional cruelty during the commission of the offense;

> (8)  The defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community; and

> (11)  The felony resulted in death or bodily injury. . .and the defendant has previously been convicted of a felony that resulted in death or bodily injury.

Tenn. Code Ann. § 40-35-114 (1994 Supp.).  Regarding mitigating factors, the trial court applied the following:

> (11)  The defendant, although guilty of the crime, committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated his conduct; and

> (13)  Any other factor consistent with the purposes of this chapter. (The appellant's military service in Vietnam and his drug and alcohol addiction.)

Tenn. Code Ann. § 40-35-113 (1990).

[6]We note that the trial court's application of enhancement factor (5), that the victim was treated with exceptional cruelty, is consistent with our supreme court's recent decision in State v. Poole, 945 S.W.2d 93 (Tenn. 1997).

five (25) years." Tenn. Code Ann. § 40-35-112(a)(1) (1990). In determining the appropriate sentence for a felony conviction, Tenn. Code Ann. § 40-35-210(c) (1990) instructs the sentencing court that the presumptive sentence for a Class A felony shall be the minimum in the range.[7] Thus, the presumptive sentence, in the instant case, is fifteen years. "Should there be enhancement and mitigating factors, the court must. . . enhance the sentence within the range as appropriate for the enhancement factors, and then reduce the sentence within the range as appropriate for the mitigating factors." Tenn. Code Ann. § 40-35-210(e).

Again, the trial court found and applied four enhancement factors and two mitigating factors. The weight afforded to these factors is left to the trial court's discretion so long as the court complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record. State v. Hayes, 899 S.W.2d 175, 185 (Tenn. Crim. App. 1995) (citing Sentencing Commission Comments, Tenn. Code Ann. § 40-35-210; State v. Moss, 727 S.W.2d 229, 237 (Tenn. 1986); see Ashby, 823 S.W.2d at 169.). This court will not disturb the trial court's determination if the record evidences that the court correctly applied the principles of sentencing. Again, the presumption of correctness applies. The trial court's imposition of the mid-range sentence of twenty years is clearly justified. This issue is without merit.

After a review of the record before us, we conclude that the evidence sufficiently supports the appellant's conviction for second degree murder. Moreover, as the trial court correctly applied and considered relevant sentencing principles, we conclude that the sentence imposed by the trial court is justified. The judgment of the trial court is affirmed.

---

[7]Effective July 1, 1995, Tenn. Code Ann. § 40-35-210 changed the presumptive sentence for all class A felonies to the midpoint of the applicable sentencing range. See State v. Chance, No. 02C01-9605-CC-00178 (Tenn. Crim. App. at Jackson, Jan. 31, 1997).

_____
DAVID G. HAYES, Judge

CONCUR:


_____
JOSEPH M. TIPTON, Judge


_____
WILLIAM M. BARKER, Judge