IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

SEPTEMBER 1998 SESSION

FILED

December 21, 1998

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | * | C.C.A. NO. 01C01-9802-CC-00091 |
| APPELLEE, | * | MAURY COUNTY |
| VS. | * | Hon. Robert L. Jones, Judge |
| CLESSIE T. JACO, | * | (Attempted Rape-Two Counts) |
| APPELLANT. | * | |

For Appellant:

William Carter Conway
236 Court Square, Suite 205
Franklin, TN 37064

For Appellee:

John Knox Walkup
Attorney General and Reporter
450 James Robertson Parkway
Nashville, TN 37243-0493

Kim R. Helper
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243-0493

Mike Bottoms
District Attorney General
P.O. Box 459
Lawrenceburg, TN 38464

Lawrence R. Nickell, Jr.
Assistant District Attorney General
P.O. Box 1619
Columbia, TN 38402

OPINION FILED: _____

AFFIRMED

GARY R. WADE, PRESIDING JUDGE

## OPINION

The defendant, Clessie T. Jaco, entered pleas of guilt to two counts of attempted rape, a Class C felony. The trial court imposed a Range I sentence of six years as to each count to be served consecutively. In this appeal of right, the defendant raises the following issues:

> (I) whether the trial court properly rejected the defendant's request for alternative sentencing; and

> (II) whether the trial court erred by imposing consecutive sentences.

We affirm the judgment of the trial court.

During the summer of 1995, S.J.,[1] the thirteen-year-old niece of the defendant, moved into the residence of the defendant and his wife. During the first week of August in 1995, the defendant engaged in oral sex with S.J. A few days later, he had sexual intercourse with her. The convictions were based upon these two incidents.

The defendant, forty years of age, had been married nearly twenty years at the time of the sentencing hearing. He and his wife have three children. The defendant has a tenth grade education and works as a painter, roofer, carpenter and repairs mobile homes. He earns approximately $20,000 to $24,000 a year, much of which is required for the support of his family. The defendant served in the National Guard for about a year and received an honorable discharge.

The defendant contended that the victim had been affectionate and

---

[1] It is the policy of this court to withhold the names of minors subjected to sexual abuse.

pursued him to some degree during the period before the two sexual encounters. His pretrial statement to Deputy Mike Diaz and Detective Michelle Jones, however, contradicted that assertion. The defendant admitted to the officers that he had continually pressured the victim for sex to the point that the victim had called his wife at work. He acknowledged that he had wanted oral sex with the victim, "First one thing, then another."

The defendant testified that he knew the wrongfulness of his actions and felt remorse. He exhibited remorse immediately upon the discovery of the crimes by his wife and the Department of Human Services. When confronted, the defendant expressed thoughts of suicide. Afterward, the defendant sought professional psychiatric counseling at the Tennessee Christian Medical Center. He was prescribed some medication and received some counseling which he discontinued after one week.

The defendant's prior criminal record consists of a public intoxication conviction and citations for traffic violations. The defendant also admitted to having used marijuana although he had no convictions of that crime.

Darlene Jaco, the wife of the defendant, described her husband as a workaholic and a good father to his three children. She testified that her husband never abused alcohol but conceded that he did occasionally use marijuana against her wishes, although not in the presence of the children in the home.

Ms. Jaco recalled that the victim's father, who had been divorced, had asked if she and her husband would take custody of the victim so that she would have a stable home. She testified that she had noticed the victim's affectionate

3

behavior toward the defendant and was concerned about the possibilities. Ms. Jaco stated that she had talked to a social worker several times before the August 1995 occurences and that the victim and the defendant assured her and the social worker nothing was going to happen.

When the sexual acts occurred, the victim called Ms. Jaco at work. When Ms. Jaco arrived at her residence, the defendant told her he wanted to kill himself for the things he had said to the victim. Unaware of what had transpired, Ms. Jaco took the defendant to the hospital to receive counseling. She did not know what had actually occurred until the defendant was arrested. Apparently, the victim had remained silent until the defendant had confessed to the doctors and police. The victim was removed from the Jaco household before the defendant was allowed to return. Ms. Jaco and the defendant have continued to live together since that time.

Ms. Jaco described the defendant as remorseful. She testified that the week of psychiatric treatment seemed to help her husband and she believed that he could have used even more counseling. Ms. Jaco stated that the defendant discontinued his use of the anti-depressant because it caused his testicles to swell. She testified that there has been no contact between the victim and the defendant since the crimes.

Neal Jaco, an older brother, described the defendant as a hard worker and a good father. He testified that the defendant had done various jobs for him including re-building some houses and a grocery store. He stated that the defendant worked long hours and completed his jobs in a workmanlike manner. Neal Jaco estimated he had paid the defendant approximately $12,000 for his work

4

during the prior year and had more work for him to do in the future. Also he stated that he had noticed the victim was "all over" the defendant in a way that was not proper for a thirteen-year-old. He described the victim as having been overtly affectionate on one occassion.

I

The defendant's first complaint is that the trial court erred by denying an alternative sentence. He argues that the trial court did not properly consider the defendant as a candidate for probation and/or community corrections.

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence.

Our review requires an analysis of (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. § 40-35-102, -103, and -210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

Among the factors applicable to the defendant's application for probation are the circumstances of the offense, the defendant's criminal record, social history, and present condition, and the deterrent effect upon and best interest of the defendant and the public. State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978).

Especially mitigated or standard offenders convicted of Class C, D, or E felonies are presumed to be favorable candidates "for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6). With certain statutory exceptions, none of which apply here, probation must be automatically considered by the trial court if the sentence imposed is eight years or less. Tenn. Code Ann. § 40-35-303(a), (b).

The purpose of the Community Corrections Act of 1985 was to provide an alternative means of punishment for "selected, nonviolent felony offenders in front-end community based alternatives to incarceration." Tenn. Code Ann. § 40-36-103. The Community Corrections sentence provides a desired degree of flexibility that may be both beneficial to the defendant yet serve legitimate societal aims. State v. Griffith, 787 S.W.2d 340, 342 (Tenn. 1990). That the defendant meets the minimum requirements of the Community Corrections Act of 1985, however, does not mean that he is entitled to be sentenced under the Act as a matter of law or right. State v. Taylor, 744 S.W.2d 919 (Tenn. Crim. App. 1987). The following offenders are eligible for Community Corrections:

> (1) Persons who, without this option, would be incarcerated in a correctional institution;
>
> (2) Persons who are convicted of property-related, or drug/alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 2 [repealed], parts 1-3 and 5-7 or title 39, chapter 13, parts 1-5;
>
> (3) Persons who are convicted of nonviolent felony

6

offenses;

(4) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;

(5) Persons who do not demonstrate a present or past pattern of behavior indicating violence;

(6) Persons who do not demonstrate a pattern of committing violent offenses; and

(7) Persons who are sentenced to incarceration or on escape at the time of consideration will not be eligible.

Tenn. Code Ann. § 40-36-106(a).

In denying alternative sentencing, the trial judge stated:

Outright probation in this case would certainly depreciate the seriousness of this offense. Even if there was no coercive element ..., this still would have amounted to the offense of incest .... So even if you give the defendant the benefit of the doubt ..., the bottom line is this was a reprehensible offense by an uncle against his niece that he sought custody of very aggressively for the two or three months preceding this early August event in 1995.

The trial judge considered the defendant's lack of a prior criminal record but ruled that, "violators of the law [must] be punished so as to create an effective general deterrent to others that might be inclined to commit similar offenses."

The nature and circumstances of the offense may often be so egregious as to preclude the grant of probation. See State v. Poe, 614 S.W.2d 403 (Tenn. Crim. App. 1981). Here, the defendant had two sexual encounters with his thirteen-year-old niece. He accepted and abused a position of private trust. Moreover, while the defendant did express remorse for his actions, he placed a portion of the blame on the victim. This suggests the defendant is not entirely able

7

to accept full responsibility for his actions; full acceptance is, of course, a better indication of amenability to rehabilitation.  See Tenn. Code Ann. § 40-35-103.

Alternative sentencing issues must be determined by the facts and circumstances of the individual case.  State v. Moss, 727 S.W.2d 229, 235 (Tenn. 1986).  "[E]ach case must be bottomed upon its own facts."  State v. Taylor, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987).  Because sentencing requires an individualized, case by case approach, that method of analysis necessarily embodies the exercise of discretion at the trial court level.  See Moss, 727 S.W.2d at 235; State v. Fletcher, 805 S.W.2d 785 (Tenn. Crim. App. 1991).  Thus, there is a sound basis for the presumptive correctness standard of appellate review:

> It is not the policy of this Court to place trial judges in a judicial strai[gh]t-jacket in this or any other area, and we are always reluctant to interfere with their traditional discretionary powers.

Ashby, 823 S.W.2d at 171.  That principle prevails here on the matter of probation. In our view, the trial court acted within its discretion in denying probation.

The trial court judge did not address the possibility of the Community Corrections Program upon denying probation.  Nevertheless, the defendant is not eligible for Community Corrections because Tenn. Code Ann. § 40-36-106(2) precludes those convicted of crimes against a person under title 39, chapter 13, parts 1-5 from participating in the program.

II

The defendant also contends that the trial court erred in imposing consecutive sentences.  The state argues that the defendant waived his right to appeal the consecutive sentencing because it was a condition of the plea agreement.

8

Regarding the issue of waiver, the state submits that there was a negotiated plea agreement with the defendant in which he agreed to the imposition of consecutive sentences stemming from his plea to two counts of attempted rape. The defendant did not respond to the state's waiver argument; instead, he chose to simply argue the issue on the merits.

The record does not contain the plea agreement or a transcript of the submission hearing. It is apparent, however, that consecutive sentencing was part of the plea agreement. During the sentencing hearing, the following exchange occurred:

> THE COURT: The agreement in this case as I understand it was for a six year sentence on each count and with them to run consecutively for a total effective package of a twelve year sentence; is that correct?
>
> MR. NICKELL [State's attorney]: Yes, sir.
>
> MR. CONWAY [Defense attorney]: Correct.

In our view, the defendant waived his right to appeal consecutive sentencing. State v. McKissack, 917 S.W.2d 714, 715 (Tenn. Crim. App. 1995). Rule 3(b)(2), Tenn. R. App. P., provides as follows:

> In criminal actions an appeal as of right by a defendant lies from any judgment of conviction entered by a trial court ... on a plea of guilty ... if the defendant seeks review of his sentence and there was no plea agreement concerning the sentence, or if the issues presented for review were not waived as a matter of law by the plea of guilty or nolo contendre and if such issues are apparent from the record of the proceedings already had.

(Emphasis added). Rule 37(b)(2), Tenn. R. Crim. P., would also bar relief:

> (b) When an Appeal Lies. An appeal lies from any order or judgment in a criminal proceeding where the law provides for such appeal, and from any judgment of conviction:
>                                        ***
> (2) upon a plea of guilty or nolo contendre if:

9

\*\*\*

<u>(ii) defendant seeks review of the sentence set
and there was no plea agreement under Rule 11(e)</u>.

(Emphasis added). The defendant cannot now complain of a sentence to which he

had agreed as part of his plea bargain agreement with the state.  Tenn. R. App. P.

3(b); Tenn. R. Crim. P. 37(b)(2)(ii).


Even if this court were to address the correctness of consecutive

sentencing, we would hold that consecutive sentencing would have been warranted

by these circumstances.  Prior to the enactment of the Criminal Sentencing Reform

Act of 1989, the limited classifications for the imposition of consecutive sentences

were set out in <u>Gray v. State</u>, 538 S.W.2d 391, 393 (Tenn. 1976).  In that case, our

supreme court ruled that aggravating circumstances must be present before

placement in any one of the classifications.  Later, in <u>State v. Taylor</u>, 739 S.W.2d

227 (Tenn. 1987), the court established an additional category for those defendants

convicted of two or more statutory offenses involving sexual abuse of minors.  There

were, however, additional words of caution:

> [C]onsecutive sentences should not be routinely imposed
> ... and ... the aggregate maximum of consecutive terms
> must be reasonably related to the severity of the
> offenses involved.

<u>Taylor</u>, 739 S.W.2d at 230.  The Sentencing Commission Comments adopted the

cautionary language.  Tenn. Code Ann. § 40-35-115.  The 1989 Act is, in essence,

the codification of the holdings in <u>Gray</u> and <u>Taylor</u>; consecutive sentences may be

imposed in the discretion of the trial court only upon a determination that one or

more of the following criteria[2] exist:

> (1) The defendant is a professional criminal who has
> knowingly devoted himself to criminal acts as a major

---

[2]The first four criteria are found in <u>Gray</u>.  The fifth category in <u>Gray</u>, based on a specific number of prior felony convictions, may enhance the sentence range but is no longer a listed criterion. <u>See</u> Tenn. Code Ann. § 40-35-115, Sentencing Commission Comments.

source of livelihood;

(2) The defendant is an offender whose record of criminal activity is extensive;

(3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to the consequences;

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and the victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b).


In State v. Wilkerson, 905 S.W.2d 933 (Tenn. 1995), our high court ruled that consecutive sentences cannot be required for any of the classifications "unless the terms reasonably relate to the severity of the offenses committed and are necessary in order to protect the public from further serious criminal conduct by the defendant." Id. at 938. The Wilkerson decision, which modified guidelines adopted in State v. Woods, 814 S.W.2d 378, 380 (Tenn. Crim. App. 1991), governing the sentencing of dangerous offenders, described sentencing as "a human process that neither can nor should be reduced to a set of fixed or mechanical rules." Wilkerson, 905 S.W.2d at 938 (footnote omitted).

11

Because the defendant was convicted of two statutory offenses involving sexual abuse of a minor, the statutory basis for imposing a consecutive sentence is Tenn. Code Ann. § 40-35-115(b)(5). The trial court gave special consideration to the relationship between the defendant and the victim of the crimes. The defendant abused a position of public trust granted to him by the state and a private trust between himself and the victim. The trial court weighed this heavily against the fact that there was no significant time span of undetected sexual activity, the nature and scope of sexual acts were somewhat limited, and there was an apparent lack of residual, physical, and mental damage to the victim.

The defendant cites State v. Hayes, 899 S.W.2d 175, 187 (Tenn. Crim. App. 1995), a case in which the defendant was convicted of sexual battery for french kissing his daughter. In Hayes, one factor weighed in favor of consecutive sentencing and other factors suggested otherwise:

> The state stresses the fact that the victim was the defendant's daughter. However, the circumstances in this case relating to the remaining factors to be considered militate against the use of subsection 115(b)(5). There was no significant time span of undetected sexual activity, the nature of the criminal conduct was nonaggravated, and the extent of residual damage to the victim caused by the conduct is not sufficiently shown.

Id. at 187 (emphasis added). Thus, this court modified the judgment to provide for concurrent sentencing. But see State v. Woodcock, 922 S.W.2d 904 (Tenn. Crim. App. 1995).

In our view, the defendant's reliance on Hayes is misplaced. As applied in this case, the factors listed in subsection 115(b)(5) do not militate against consecutive sentencing; they weigh in favor of it. Here, the defendant was convicted of "two or more statutory offenses involving sexual abuse of a minor."

12

Unlike <u>Hayes</u>, the defendant's criminal conduct in this case was aggravated in that it involved oral sex and intercourse with his niece. Even though the time span was short and there was no proof of emotional damage at the sentencing hearing, the fact that the conduct was aggravated should be given substantial weight.

In this case, the aggregate sentence reasonably relates to the severity of the offenses. The record establishes that defendant aggressively tried to gain custody of the victim in order to help his brother. The defendant's sexual misconduct began within a month. Furthermore, the total sentence is necessary for the protection of the public from further crimes by the defendant. The record shows the defendant, after having oral sex with the victim, felt remorseful for what he had done. Despite the fact that he had time to reflect on the nature of his actions, he engaged in sexual intercourse with the victim.

Accordingly, the judgment of the trial court is affirmed.

_____
Gary R. Wade, Presiding Judge

CONCUR:


_____
Thomas T. Woodall, Judge


_____
Curwood Witt, Judge