STATE of Tennessee, Appellee,

v.

James Edward HAYES, Appellant.

Court of Criminal Appeals of Tennessee,
at Jackson.

Jan. 11, 1995.

Permission to Appeal Denied by
Supreme Court May 8, 1995.

Tom W. Crider, Public Defender, Diane Blount, Asst. Public Defender (at trial), J. Diane Stoots, Asst. Public Defender (on appeal), Trenton, for appellant.

Charles W. Burson, Atty. Gen. and Joel W. Perry, Asst. Atty. Gen., Nashville, Clayburn L. Peeples, Dist. Atty. Gen. and Garry Brown, Asst. Dist. Atty. Gen., Trenton, for appellee.

## *OPINION*

TIPTON, Judge.

The defendant, James Edward Hayes, was convicted by a jury in the Gibson County Circuit Court on two counts of aggravated sexual battery, a Class B felony. As a Range I, standard offender, he received the maximum sentence of twelve years for each offense to be served consecutively, for an effective sentence of twenty-four years in the custody of the Department of Correction. In this appeal as of right, the defendant contends that:

(1) the evidence was insufficient to convict him for either offense,

(2) his prosecution and conviction on Count Two violated due process because of

insufficient notice of the extent of the conduct's criminal prohibition,

(3) the trial court erred in allowing evidence of the defendant's independent acts of physical contact with the victim, and

(4) the trial court erred in imposing maximum and consecutive sentences.

We affirm the convictions, but the sentences are modified.

The indictment alleged that the defendant had unlawful sexual contact with the victim, who was less than thirteen years old, once between May 1 and July, 1992, under Count One, and again on an unnamed day in July, 1992, under Count Two. The victim is the defendant's daughter.

The victim testified that when she was twelve years old in early June, 1992, she was alone with her father in her parents' bedroom when he asked her if she knew what French kissing was. She said that she told him that she did and that he stuck his tongue into her mouth. She said that the defendant tried to stick his tongue into her mouth every time he kissed her during the course of the summer.

The victim testified that her mother worked during the day and the defendant worked from midafternoon until midnight. She said that she and her brother were home with the defendant after her summer school classes.

The victim testified that a couple of days after summer school had started, the defendant started coming to her bed in the mornings. For the first few times, the defendant was dressed in his pants and would lie on top of the covers. However, he then began wearing only his underwear and started getting under the covers. She said that she wore a T-shirt and either underwear or shorts to bed.

The victim stated that one time in June, the defendant was in her bed and rubbed her back and the side of her breast. She said she was scared and did not do anything. She stated that on another day, the defendant rubbed her back and the side of her breast again and that she told her mother a couple of days later.

The victim said that she began staying out with friends as long as she could, including spending the night. She said that she was afraid of what was happening. She testified that the first rubbing occurred on the outside of her clothing, but the defendant put his hand under her shirt for the second rubbing. On cross-examination, the victim admitted that she had not told the investigators about there being skin contact, but she said she had been afraid during the interview and had later recalled what exactly happened.

The victim's mother testified that she worked during the day while the defendant stayed home with the children. She said that during the summer, the victim became depressed, cried a lot, and wanted her mother to drive her to school and other places instead of her father. She said that on July 27 or 28, 1992, the victim came to her at night, crying, and told her what had happened. She said that she put the defendant's clothes on the porch and left him a note saying that the victim had told her what had been going on and that he should go away.

The victim's mother testified that she called the police the next morning and that she and the victim met with Beth Pate of the Department of Human Services and Humboldt Police Detective Dennis Wright for an interview. She acknowledged that she and the defendant were divorced before the trial.

Detective Wright testified that he and Ms. Pate interviewed the victim on July 28, 1992. He said that the defendant was arrested that same day. The defendant was convicted upon the foregoing proof.

**I**

▮ The defendant contends that the evidence was insufficient to show that he intentionally touched an intimate part of the victim, or the clothing over an intimate part, for the purpose of sexual arousal or gratification as is required for any sexual battery. *See* T.C.A. §§ 39–13–501(6), –504(a). Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a

reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). This means that we may not reweigh the evidence, but must presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. *See State v. Sheffield,* 676 S.W.2d 542, 547 (Tenn.1984); *State v. Cabbage,* 571 S.W.2d 832, 835 (Tenn.1978).

In this respect, with an attack on the sufficiency of the evidence of the defendant's intent, we note that intent is almost always proven circumstantially. *See Hall v. State,* 490 S.W.2d 495, 496 (Tenn.1973). In this case, there was direct evidence of the defendant touching the victim's breast and the clothing over her breast in a rubbing fashion. This was done after the defendant, dressed only in his underwear, entered the victim's bed while her mother was away from the house. Also, these events occurred in a period of time during which the defendant was attempting to stick his tongue into the victim's mouth whenever they kissed. Given the common connotation of intimacy associated with such kissing, the timing of the events when the mother was not present, the location of the events, the state of dress of the defendant and the victim, and how the physical contact occurred, we conclude that the evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that the touching was intentional and for the purpose of sexual arousal or gratification. Thus, the evidence was sufficient to convict the defendant.

## II

The defendant complains about his conviction for aggravated sexual battery under Count Two as a result of the event proven to have occurred in July, 1992. His complaint stems from a change in one of the relevant statutes that was effective on July 1, 1992. He contends that with the change in the statute, he was not given sufficient notice, as required by due process, that his conduct upon which he was convicted was unlawful.

Since its enactment in 1989, T.C.A. § 39–13–504(a) has defined aggravated sexual battery as "unlawful sexual contact with a victim by the defendant ... accompanied by any of the circumstances listed in § 39–13–502(a)." *See* 1989 Tenn.Pub.Acts, ch. 591, § 1, at 1205. Enacted at the same time, T.C.A. § 39–13–502(a) provided the following circumstances which would make a rape aggravated:

(1) Force or coercion is used to accomplish the act and the defendant is armed with a weapon or any article used or fashioned in a manner to lead the victim reasonably to believe it to be a weapon;

(2) The defendant causes bodily injury to the victim;

(3) The defendant is aided or abetted by one (1) or more other persons; or [1]

(4) *The victim is less than thirteen (13) years of age.*

(Emphasis added). *See* 1989 Tenn.Pub.Acts, ch. 591, § 1, at 1205. It is the victim's age in this case that was used to render the defendant's offenses aggravated.

However, T.C.A. § 39–13–502 was amended effective July 1, 1992, by deleting the victim's age as an aggravating circumstance. *See* 1992 Tenn.Pub.Acts, ch. 878, § 3. The initial question, then, is whether the deletion worked a similar change to the aggravated sexual battery statute by its reference to the aggravated rape statute. The answer is no. In *State v. Case,* 884 S.W.2d 146 (Tenn.Crim.App.1994), the defendant was convicted of aggravated sexual battery of a victim less than thirteen years old for conduct occurring after the age circumstance had been deleted from T.C.A. § 39–13–502(a). He contended that the deletion applied to aggravated sexual battery, as well, so as to render his conviction for such offense a nullity. This court disagreed and stated:

(B) The defendant knows or has reason to know that the victim is mentally defective, mentally incapacitated or physically helpless.

1990 Tenn.Pub.Acts, ch. 980, § 3, at 604.

---

1. Subsection (3) was amended in 1990 as follows:

 The defendant is aided or abetted by one (1) or more other persons; and
 (A) Force or coercion is used to accomplish the act; or

The State contends that a subsequent modification of a statute adopted by reference does not affect the language of the adopting statute absent clear legislative intent to do so. Our Supreme Court has adopted the following rule as stated in *Hassett v. Welch*, 303 U.S. 303, 314, 58 S.Ct. 559, 564, 82 L.Ed. 858 (1938):

> Where one statute adopts the particular provisions of another by a specific and descriptive reference to the statute or provisions adopted, the effect is the same as though the statute or provisions adopted had been incorporated bodily into the adopting statute. * * * Such adoption takes the statute as it exists at the time of adoption and does not include subsequent additions or modifications of the statute so taken unless it does so by express intent.

*Roddy Mfg. Co. v. Olsen*, 661 S.W.2d 868, 871 (Tenn.1983).

We find that nothing within 1992 Tenn. Pub.Acts, ch. 878 suggests that the legislature intended to amend both the aggravated rape and the aggravated sexual battery statutes. The caption describes this chapter as "An act to amend T.C.A. § [sic] 39, 40, and 41, relative to the punishment for certain criminal offenses and the incarceration of certain criminal offenders." The apparent purpose of the Act was to define rape of a child as a separate offense and to eliminate the resulting duplication in the aggravated rape statute. We agree with the State's assertion that the legislature's desire to protect children by extending the period of confinement for child rapists would seem to rebut any suggestion that the legislature intended to decriminalize the commission of aggravated sexual battery on children. The legislature's true intent was perhaps best illustrated by its rewriting of T.C.A. § 39-13-504(a) to ensure that the victim's youthful age is an aggravating element of the offense of aggravated sexual battery. T.C.A. § 39-13-504(a)(4).[2]

884 S.W.2d at 147-48 (footnote omitted). Thus, the victim's age remained a qualifying circumstance for aggravated sexual battery even though such circumstance was deleted from the aggravated rape statute.

■ The issue not expressly addressed in *Case*, as noted in Judge White's concurring opinion in that case, but which is raised by the present defendant is whether adequate notice for due process purposes was provided for the use of the age aggravating circumstance for aggravated sexual battery after such circumstance was deleted from the aggravated rape statute. We hold that due process was not violated.

■ Constitutional due process prohibits holding an individual "criminally responsible for conduct which he could not reasonably understand to be proscribed." *United States v. Harriss*, 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954); *see Leech v. American Booksellers Ass'n*, 582 S.W.2d 738 (Tenn.1979). The issue of notice generally arises in the context of whether or not the words used in a statute proscribing conduct convey so vague a meaning that they fail "to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute." *Harriss*, 347 U.S. at 617, 74 S.Ct. at 812. In such a case, though, whether the meaning of a statute is sufficiently definite is not determined solely by trying to interpret the statutory language on its face. The clarity in meaning required by due process may be derived from other sources, such as, judicial interpretations or legislative history. *See, e.g., Rose v. Locke*, 423 U.S. 48, 96 S.Ct. 243, 46 L.Ed.2d 185 (1975); *United States v. National Dairy Products Corp.*, 372 U.S. 29, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963); *State v. Wilkins*, 655 S.W.2d 914 (Tenn.1983).

In *Rose v. Locke*, the Supreme Court was considering whether conviction for the act of cunnilingus under Tennessee's then "crime against nature" statute violated due process through vagueness in that previous judicial decisions in various jurisdictions gave similar language either a narrow interpretation or a

---

**2.** This reference to the aggravated sexual battery statute relates to its subsequent amendment by replacing the reference to the aggravated rape statute with the specific aggravating circumstances, including age, which apply.

broad one, thereby differing on what conduct was actually prohibited. The Court began by recognizing that due process did not require absolute certainty in the meaning of a statute, noting that many statutes contain inherent vagueness. "Even trained lawyers may find it necessary to consult legal dictionaries, treatises, and judicial opinions before they may say with any certainty what some statutes may compel or forbid." 423 U.S. at 50, 96 S.Ct. at 244.

The Court noted that a 1955 Tennessee case had applied the statute to fellatio and had disagreed with jurisdictions which applied a narrow definition of the offense. Also, it referred to a 1959 Tennessee case that had quoted from a Maine decision relative to crime against nature covering all unnatural copulation. Finally, the Court noted that the Maine statute, which Tennessee had equated with its own, had been applied to cunnilingus before either of the cited Tennessee decisions were rendered. Through such an analysis, the Court concluded that the Tennessee Supreme Court had given sufficiently clear notice that the crime against nature statute involved the broader of the two interpretations and would cover the act of cunnilingus when such a case arose. *Id.* 423 U.S. at 52, 96 S.Ct. at 245.

The significance of the foregoing analysis to the issue in this case includes its implicit assumption, even for due process notice purposes, that a person is bound by a criminal statute even if the extent of its reach is primarily derived from secondary sources not readily apparent to the unsophisticated reader of the statute. In other words, we presume that a person knows the law, including its properly construed meaning. *See, e.g., State ex rel. Davis v. Thomas,* 88 Tenn. 491, 12 S.W. 1034 (1890). Ignorance of the law "is never admissible to excuse crime." *Hunter v. State,* 158 Tenn. 63, 12 S.W.2d 361, 363 (1928). "A little reflection will teach any one that, if this maxim were not applied and enforced as to the great body of criminal offenses, no community could be held together in peace and security; for evil-doers would have an open door for

their escape." *McGuire v. State,* 26 Tenn. 54, 55 (1846).

In the present case, the law in Tennessee since 1983 under *Roddy Mfg. Co.* is that a statute that adopts the provisions of a second statute by specific reference is controlled by the originally adopted provisions regardless of the later modification of the second statute, unless expressly intended otherwise. Thus, the defendant was put on notice that the 1992 amendment to T.C.A. § 39–13–502(a) would not affect the existing reach of the aggravated sexual battery statute unless such an effect was expressly intended. As indicated in *Case,* though, the 1992 act not only did not hint at an intent to amend the aggravated sexual battery law, it patently reinforced the legislature's desire to protect children from sexual assaults. We conclude that a review of the relevant case law and statutes would give a person of ordinary intelligence fair notice that the commission of unlawful sexual contact in July, 1992, against a victim under thirteen years of age would constitute aggravated sexual battery.

We note that the defendant does not claim, nor does the record show, that he, in fact, was unaware of the age of the victim constituting an aggravating circumstance. Also, he obviously makes no claim that he was not on notice that the same conduct in June constituted aggravated sexual battery. At the time of the July offense, the published Volume 7 of the Tennessee Code Annotated, both bound and supplemental, contained the definition of aggravated sexual battery and aggravated rape existing before July 1, 1992. Thus, even the defendant would have us presume that he knew about the 1992 amendment enacted on May 5, 1992, and filed with the Tennessee Secretary of State. However, the fallacy in his position is that he wants the benefit of the presumption that he knew of the 1992 amendment, but he wants the presumption of knowledge ignored relative to how the amendment is reasonably construed under *Roddy Mfg. Co.* not to affect the reach of the aggravated sexual battery statute.[3]

---

**3.** This is not a case where due process prohibits sanctioning a person who unwittingly breaks a law by passive conduct which an ordinary person would not even suspect to be, at least, potentially

We hold that the defendant was properly convicted of aggravated sexual battery for his July, 1992, conduct.

## III

■ The defendant contends that the evidence about his kissing the victim was inadmissible as evidence of other bad acts whose probative value was outweighed by unfair prejudice. *See* Tenn.R.Evid. 404(b). This rule provides a general prohibition for evidence of other crimes or acts that are independent of the offenses on trial in "recognition that such evidence easily results in a jury improperly convicting a defendant for his or her bad character or apparent propensity or disposition to commit a crime regardless of the strength of the evidence concerning the offense on trial." *State v. Rickman,* 876 S.W.2d 824, 828 (Tenn.1994). However, Rule 404(b) does allow such evidence when it is relevant to a litigated issue, such as, identity, intent, or rebuttal of accident or mistake, and its probative value is not outweighed by the danger of unfair prejudice. *See State v. Parton,* 694 S.W.2d 299, 303 (Tenn.1985); *State v. Hooten,* 735 S.W.2d 823 (Tenn.Crim. App.1987).

■ In this case, the state was required to prove that the defendant's touching of the victim's breast was intentional and for the purpose of sexual arousal or gratification. *See* T.C.A. § 39–13–501(6). The trial court's stated reason for admitting the evidence was its relevance to the defendant's state of mind. We agree. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn.R.Evid. 401. In this respect, the trial court is entitled to draw upon common sense, general knowledge, and its understanding of human conduct and motivation in assessing whether certain evidence could reasonably affect an assessment of the

criminal. *See Lambert v. California,* 355 U.S. 225, 228, 78 S.Ct. 240, 242, 2 L.Ed.2d 228 (1957) (absent a requirement of knowledge or the probability of knowledge, due process bars conviction under city ordinance making it illegal for a convicted felon to remain in city more than five days without registering). Adult sexual contact with

probability of the fact to be inferred. *See* Neil P. Cohen et al., *Tennessee Law of Evidence,* § 401.5, at 69–70 (2d ed. 1990); 1 John W. Strong, *McCormick on Evidence,* § 185, at 778 (4th ed. 1992). In reviewing the determination of probative value, we will not overturn the trial court's decision absent an abuse of discretion. *See State v. Leath,* 744 S.W.2d 591, 593 (Tenn.Crim.App.1987).

As previously indicated in this opinion, we believe that the type of kissing described by the victim is sufficiently associated in common experience with intimacy of a romantic nature, not a parent-child one, so as to make the pattern of kissing or attempted kissing relevant to the defendant's intent in touching the victim during the same period of time. Likewise, given the timing of the defendant's acts and their relevance to the defendant's intent in touching the victim, we fail to see the existence of any unfair prejudice, as opposed to that prejudice which naturally flows from all admissible evidence and is intended to persuade the trier of fact.

## IV

The defendant contends that the trial court imposed excessive sentences in that it improperly applied certain statutory enhancement factors and erred in requiring the sentences to be served consecutively. The trial court found the existence of the following enhancement factors as provided in T.C.A. § 40–35–114:

(1) the defendant has a previous history of criminal convictions or criminal behavior,

(4) the victim was particularly vulnerable because of age,

(7) the offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement,

(8) the defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community,

children is commonly understood in this country to be prohibited. In fact, even under the defendant's theory, he would still be put on notice that his conduct was prohibited as sexual battery. *See* T.C.A. §§ 39–13–501(1), –503(a)(1), and –505(a).

(13)(C) the offenses were committed while the defendant was on probation from a previous felony conviction.

It is apparent from the record that the trial court applied the factors to each offense. The trial court ordered consecutive sentences based upon its determining that the defendant was a dangerous offender. *See* T.C.A. § 40–35–115(b)(4). Also, the sentences are to be served consecutively to a previously imposed sentence for which probation was revoked because of the present offenses.

 Appellate review of sentencing is *de novo* on the record with a presumption that the trial court's determinations are correct. T.C.A. §§ 40–35–401(d) and –402(d). As the Sentencing Commission Comments to these sections note, the burden is now on the appealing party to show that the sentencing is improper. This means that if the trial court follows the statutory sentencing procedure, makes findings of fact that are adequately supported in the record, and gives due consideration and proper application of the factors and principles which are relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result were preferred. *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn.Crim. App.1991). However, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

 In conducting a *de novo* review, we must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf and (7) the potential for rehabilitation or treatment. T.C.A. §§ 40–35–102, –103 and –210; *see Ashby*, 823 S.W.2d at 168; *State v. Moss*, 727 S.W.2d 229 (Tenn.1986).

At the time of sentencing, the defendant was a thirty-four-year-old, divorced high school graduate. He had a history of relatively steady employment until he was arrested in this case.

The record reflects that the defendant was previously convicted of aggravated sexual battery in February, 1992, relative to his conduct with a niece. He received an eight-year sentence which was suspended except for periodic confinement totalling one hundred four days. He was required to undergo mental health counseling.

At the sentencing hearing, Helen Carter testified about her knowledge of the defendant and his family. Essentially, other than her expressing doubts about the validity of the various claims against the defendant, her testimony revealed that the defendant had told her that he had been a victim of sex abuse on several occasions when he was a child.

David Matlock testified that he was employed by the Carey Counseling Center of Trenton as a therapist, but the record does not reveal the field in which he had been trained. He said that he had seen the defendant in therapy on three or four occasions in the previous year relative to the defendant's first case. Mr. Matlock acknowledged that the defendant had admitted abusing his niece for approximately nine years. He said that he believed that the defendant was open and honest with him and was sincerely sorry for what had happened to the defendant's niece. He said that he was also aware that the defendant had been to a facility in Florida for counseling relative to the first case. On May 14, 1992, Mr. Matlock wrote the defendant's probation officer that he was releasing the defendant from therapy with a positive prognosis after three individual therapy sessions. He acknowledged in his testimony that his belief was wrong and that he now believed that intense, inpatient therapy was the only answer.

The presentence report reflects that the victim's mother wrote a letter indicating that there had been a lot of "tears and despair" for the victim both from the events and from having to testify against her father. She stated that the defendant's children did not want him to go to prison, but that it did not

matter to her what happened with him. The defendant neither presented a statement to the presentence officer nor testified at the sentencing hearing.

### A

As for the enhanced sentences, the defendant contends that the only applicable enhancement factors related to him having a previous conviction, factor (1), and being on probation when the present offenses were committed, factor (13)(C). He asserts that the remaining three factors used by the judge were not justified and that he is entitled to less than the maximum sentence of twelve years for a Range I, standard offender on each count. The state's brief does not address how any of the questioned enhancement factors apply in this case and only asserts in summary fashion that the trial court properly sentenced the defendant to the maximum of the applicable range.

 The sentence to be imposed by the trial court is presumptively the minimum in the range unless there are enhancement factors present. T.C.A. § 40–35–210(c). Procedurally, the trial court is to increase the sentence within the range based upon the existence of enhancement factors and, then, reduce the sentence as appropriate for any mitigating factors. T.C.A. § 40–35–210(d) and (e). The weight to be afforded an existing factor is left to the trial court's discretion so long as it complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record. T.C.A. § 40–35–210, Sentencing Commission Comments; *State v. Moss,* 727 S.W.2d at 237; *see State v. Ashby,* 823 S.W.2d at 169. For the purpose of review, the trial court must preserve in the record the factors it found to apply and the specific findings of fact upon which it applied the sentencing principles to arrive at the sentence. *See* T.C.A. §§ 40–35–210(f) and –209(c).

 Relative to the victim being particularly vulnerable due to her age, factor (4), the defendant asserts that nothing exists in the record to suggest such vulnerability. We agree. In *State v. Adams,* 864 S.W.2d 31, 35 (Tenn.1993), our supreme court held that fac-

tor (4) was meant to allow for enhancement of a sentence when the natural physical and mental limitations resulting from a victim's age rendered the victim *particularly* vulnerable in such terms as incapacity to resist, to summon help, or to testify against the perpetrator. It concluded that the state bears the burden of proving the existence of limitations which would render the victim particularly vulnerable. *Id.* Significantly, the court held that the state failed to show such limitations when the evidence reflected that the victims in *Adams* were four, five, and twelve years of age. Implicit in *Adams* is that mere proof that a victim is twelve is insufficient to support application of factor (4). In the present case, the record fails to show how the victim was particularly vulnerable because of her age. Factor (4) should not have been applied.

 Relative to the defendant committing the offenses against the victim to gratify his desire for pleasure or excitement, factor (7), the defendant contends that it should not apply because it is present in every aggravated sexual battery. We note that a necessary element of sexual battery, aggravated or not, is sexual contact which is defined as the intentional touching of an intimate part or the clothing over such part "for the purpose of sexual arousal or gratification." T.C.A. § 39–13–501(6). In *Adams,* the supreme court indicated that a sexually motivated rape was done to gratify a desire for pleasure or excitement. 864 S.W.2d at 35. Thus, because a sexual battery requires a touching for the purpose of sexual arousal or gratification, it necessarily includes the intent to gratify the defendant's desire for pleasure or excitement. Given the fact that T.C.A. § 40–35–114 provides that a factor cannot be used to enhance a sentence if it also is an essential element of the offense as charged in the indictment, factor (7) is inapplicable in this case.

 As for the defendant having a previous history of unwillingness to comply with the conditions of a sentence involving release in the community, factor (8), the defendant asserts that no such previous history was shown to exist other than his being on proba-

tion when the present offenses were committed. He claims that the application of factor (13)(C) addresses this circumstance. We note that this court has previously indicated that the commission of the offense for which a defendant is being sentenced should not make factor (8) applicable, emphasizing that there must be a *previous* history of unwillingness. *See State v. James M. Coggins, Jr.,* No. 01C01–9310–CR–00360, Davidson Co., slip op. at 15 n. 4, 1994 WL 390445 (Tenn. Crim.App. July 28, 1994). Moreover, the fact that the legislature specifically addressed under factor (13)(C) the enhancement of a sentence for a felony committed while a defendant is on probation from a previous felony conviction indicates that the legislature may not have intended to bring into play factor (8) for the mere commission of the offense for which sentencing is to occur. We conclude that the interpretation in *Coggins* is the most logical to use for the application of factor (8).

However, we are mindful of the fact that a defendant being sentenced for a series of offenses committed over time while on probation could be viewed, for sentencing for the most recent offenses, as having a proven previous history of unwillingness to abide by community release conditions by virtue of the earlier offenses for which sentencing is to occur. Such an approach has been used in multiple offense cases relative to a previous history of criminal behavior under enhancement factor (1). *See, e.g., State v. Cummings,* 868 S.W.2d 661, 666–67 (Tenn.Crim. App.1992) (evidence of numerous criminal offenses over seven-month period allowed application of factor (1) because of history of criminal behavior); *cf. State v. Hicks,* 868 S.W.2d 729, 732 (Tenn.Crim.App.1993) (first offense did not justify use of factor (1) for second offense occurring an hour later); *State v. Carol Brown,* No. 01–C–01–9108–CC–00240, Marshall Co., slip op. at 7, 1993 WL 17479 (Tenn.Crim.App. Jan. 28, 1993), *app. denied* (Tenn. June 7, 1993) (multiple drug offenses over eighteen days resulting in multiple convictions did not warrant use of factor (1), but such would not "preclude the possible use for enhancement purposes of prior counts in a multi-count indictment

when the span of time covered is considerably longer. . . .")

Although the present case involves two separate offenses, we believe that the particular circumstances presented, in terms of the timing of the offenses, the evidence of the defendant's compliance with his other probation requirements, and the therapist's testimony about the nature of the defendant's problems and the failure to provide appropriate treatment, do not readily suggest that the defendant presented a previous history of unwillingness to abide by the conditions of his probation as contemplated under factor (8).

In any event, it is important to note that whether both factor (8) and factor (13)(C) apply or only one applies, the amount of sentencing enhancement involved does not necessarily change. The mere number of existing enhancement factors is not relevant—the important consideration being the weight to be given each factor in light of its relevance to the defendant's personal circumstances and background and the circumstances surrounding his criminal conduct. *See State v. Moss,* 727 S.W.2d at 238. In this respect, the more negatives shown to exist in the defendant's background and the greater degree of his proven culpability in the offense may translate into the application of multiple enhancement factors, but the extent of sentencing enhancement flows from the increased personal negatives and degree of culpability, not the number of applicable factors.

Thus, the fact that two related factors are both found to exist by virtue of the existence of the same fact or circumstance does not mean that the length of the sentence enhancement must be doubled in some mathematical fashion. It only means that the trial court is entitled to assess the proven degree of culpability and negative personal circumstances under both factors in determining an appropriate sentence. Likewise, even if we determine that fewer factors should apply than used by the trial court, this does not mean that the length of the sentence is automatically reduced. That is, if the same degree of culpability and negative

circumstances relate to the remaining applicable factors, the original enhancement may still be appropriate.

 Furthermore, in considering the record pursuant to our *de novo* review, we also conclude that the defendant, as the victim's father charged with her care and control, abused his position of private trust in a manner that significantly facilitated his commission of the offenses. *See* T.C.A. § 40–35–114(15). Thus, we conclude that factors (1), (13)(C) and (15) should be applied. In assessing the weight to give these factors, we agree with the trial court's expression of concern that the offenses were committed within months of the defendant being given the largess of probation for a similar offense. The defendant's history of similar criminal behavior resulting in his earlier conviction, his violation of the trial court's trust placed in him by the grant of probation and his violation of his parental trust weigh heavily against him and would justify a maximum sentence.

 On the other hand, we also determine that the defendant should receive the benefit in mitigation of the fact that his conduct neither caused nor threatened serious bodily injury. *See* T.C.A. § 40–35–113(1). In our assessment of the weight to give this mitigating factor, we are swayed by the fact that the defendant's criminal conduct was particularly nonaggravated. In consideration of the applicable factors, we determine that the defendant should receive for each offense a sentence of eleven years in the custody of the Department of Correction.

**B**

 The defendant contends that these two sentences should not be served consecutively to each other. The trial court indicated that the consecutive sentences were based upon the defendant being an "absolutely dangerous offender," but it did not give any explanation of how it reached this determination. Pursuant to T.C.A. § 40–35–115(b)(4), consecutive sentences may be ordered if the trial court finds by a preponderance of the evidence that the defendant is a dangerous offender whose behavior indicates little regard for human life and no hesitation about committing a crime in which the risk to human life is high. This dangerous offender provision simply has no application to this case. The record provides no support for the trial court's determination and the presumption of its correctness falls.

While the state tacitly concedes that the defendant is not a dangerous offender, it asserts that consecutive sentences are warranted pursuant to T.C.A. § 40–35–115(b)(5):

> The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims....

The state stresses the fact that the victim was the defendant's daughter. However, the circumstances in this case relating to the remaining factors to be considered militate against the use of subsection 115(b)(5). There was no significant time span of undetected sexual activity, the nature of the criminal conduct was nonaggravated, and the extent of residual damage to the victim caused by the conduct is not sufficiently shown.

 Although not addressed by the state, we note that the fact that the defendant was on probation when these offenses were committed renders him eligible for consecutive sentences. *See* T.C.A. § 40–35–115(b)(6). However, we decline to impose consecutive sentences. Given all of the circumstances presented in this case, we determine that concurrent eleven-year sentences to be served consecutively to the sentence previously imposed are appropriate in relation to the severity of the offenses and are the least severe measures necessary to deter the defendant's future criminal conduct, to protect society and to deter others who are similarly situated and may be likely to commit similar offenses. *See* T.C.A. §§ 40–35–

102 and –103; *State v. Taylor*, 739 S.W.2d 227, 230 (Tenn.1987).

In consideration of the foregoing, the convictions are affirmed. The sentences are modified to eleven years each and are to be served concurrently with each other, but they shall remain consecutive to the defendant's previously imposed sentence.

WHITE and WELLES, JJ., concur.