IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

JUNE 1998 SESSION



FILED

July 15, 1999

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Appellee, | ) | No. 01C01-9708-CC-00382 |
| | ) | |
| | ) | Hickman County |
| v. | ) | |
| | ) | Honorable Cornelia A. Clark , Judge |
| | ) | |
| ROBERT WILKES, | ) | (Aggravated Sexual Battery) |
| | ) | |
| Appellant. | ) | |

For the Appellant:

John H. Henderson
District Public Defender
P.O. Box 68
Franklin, TN 37065-0068

For the Appellee:

John Knox Walkup
Attorney General of Tennessee
        and
Lisa A. Naylor
Assistant Attorney General of Tennessee
425 Fifth Avenue North
Nashville, TN 37243-0493

Joseph D. Baugh, Jr.
District Attorney General
        and
Ronald L. Davis
Assistant District Attorney General
Williamson County Courthouse
P.O. Box 937
Franklin, TN 37065-0937

OPINION FILED:_____

CONVICTIONS AFFIRMED; SENTENCES MODIFIED

Joseph M. Tipton
Judge

# O P I N I O N

The defendant, Robert Wilkes,[1] appeals as of right from his convictions by a jury in the Hickman County Circuit Court of six counts of aggravated sexual battery, a Class B felony. For each of the six counts, the trial court sentenced the defendant to serve thirty years in the Department of Correction as a Range III, persistent offender. The trial court ordered the sentences to run consecutively to each other and to the defendant's current prison sentences. The trial court assessed a fine of twenty-five thousand dollars for each count for a total fine of one hundred fifty thousand dollars.

The defendant raises four issues on appeal. He contends that:

(1) the evidence is insufficient to support the convictions;

(2) the trial court erred in not acquitting the defendant of counts four and five because count four merely corroborated count two and count five merely corroborated count three rather than establishing separate offenses;

(3) the trial court erred in enhancing the sentence of the defendant from twenty to thirty years and in ordering the six thirty-year sentences to run consecutively to each other and to the sentence the defendant is already serving; and

(4) the trial court erred in assessing a twenty-five thousand dollar fine per count because the defendant is indigent.

We have reviewed the record on appeal, the briefs of the parties, and the applicable law, and we hold that the evidence is sufficient to support the defendant's convictions. We affirm the trial court's imposition of the maximum thirty-year sentence for each count, but we modify the trial court's sentence by ordering that counts one through three run concurrently to each other and that counts four through six run concurrently to each other but consecutively to counts one through three for an effective sixty-year sentence. All six counts will remain consecutive to the defendant's previously imposed

---

[1]We note that the defendant's name appears as Robert Wilks in both briefs and throughout the record. However, absent an order of amendment, this court uses the name set forth in the charging instrument.

sentence. We also modify the defendant's fine to five thousand dollars for each of the six counts or thirty thousand dollars for the total fine imposed.

David Bruce Westbrooks, an internal affairs investigator for the Department of Correction, testified that in July and August of 1995, the defendant was incarcerated in the minimum security annex of Turney Center Industrial Prison and Farm. He testified that the annex's visiting gallery contained a "kid's corner," which had a playhouse, games, and books for the children visiting inmates. Westbrook stated that during visitation, two correctional officers and one administrative staff person worked in the annex. He testified that officers and staff workers could supervise the visiting gallery, including the kid's corner, from an operations cubical, but due to their various duties throughout the annex, the operations cubical was not staffed continuously during visitation.

Sheila Sutton Durham testified that she worked as a counselor at Turney Center. As the custodian of the visitation records in the annex, Durham testified that the file on William Lee Bramlett, an inmate, contained visitation applications for Bramlett's two children: a son, K.B., whose birthday was listed on the application as June 11, 1989, and a daughter, J.B., whose birthday was listed on the application as November 1988. She stated that a copy of K.B.'s birth certificate was attached to his application and that the birth certificate listed his birthday as June 11, 1988. She testified that J.B.'s application did not have a birth certificate attached to it. She related that on visitation days, the defendant worked in the kid's corner of the visiting gallery. While working in this capacity, the defendant would turn on the television or pass out books and toys to the children visiting inmates. Durham testified that the defendant's name was not on the inmate visitation sign-in sheet for July 22, 1995, but it did appear on the August 5 and August 12 sheets. Durham stated that while on duty at the annex on August 5 and August 12, she would have gone into the visiting gallery ten to twenty

3

times each day. She testified that during the time she was in the visiting gallery, she never saw any impropriety on the part of the defendant.

Joy Lamberson testified that on July 22, 1995, she came to the annex's visiting gallery to visit her brother, who was an inmate. While in the visiting gallery, she stated that she saw the defendant holding a boy on his lap. Lamberson testified that the defendant had his hands on the boy's genital area, rubbing it, and that the defendant was rubbing his own genital area against the boy's bottom--a movement she described as hunching. She testified that later that day, she saw the defendant pick up a little girl, slip his hands inside of her shorts, and move his thumbs between her legs. Lamberson identified the boy as K.B. and the girl as J.B. She stated that she did not report these incidents until August 12 because she feared the possible repercussions for her brother.

Kimberly Brown, daughter of Joy Lamberson, testified that she visited her uncle at the annex on July 22, 1995. Brown related that while sitting in the visitation gallery, she saw the defendant sitting in a chair with his legs spread and with a little boy sitting on the same chair in front of him. She testified that the defendant was fondling the boy's crotch and rubbing his own genital area against the boy's bottom. She testified that while this incident was taking place, a guard was sitting next to the defendant reading a paper. Brown said that later she saw the defendant lift a little girl up to reach something on top of a cabinet in the kid's corner. She testified that while lifting her, the defendant put his fingers under her dress and "played" with her. Brown identified the boy as K.B. and the girl as J.B. She testified that because she did not want to cause any trouble for her uncle, she waited to report the incidents in a letter to the warden dated August 13.

4

Constance Elaine Allen testified that she was at Turney Center Annex visiting her husband on August 5, 1995. She stated that while she was in the visiting gallery, she saw the defendant sitting with a little boy on his lap. She testified that the defendant placed his hand inside the boy's shorts and began touching the boy's genitals. She stated that later that day she saw the defendant and the boy by a closet and that the defendant was touching the boy's genital area on the outside of his shorts. Allen identified the boy as K.B. Allen testified that she reported these incidents the following Saturday, August 12, 1995.

Kristen Lloyd testified that in August of 1995, she went with her mother and her sister-in-law to visit her brother, an inmate at Turney Center. She testified that she asked the man working in the kid's corner to tie a large piece of white paper around her waist. She said that while he was doing this, he touched her in her "private place." She identified the defendant as this man. When asked to explain to the jury which private place she meant, she stated, "The Front." She further explained that as the defendant was tying the white paper around her waist, she felt the defendant's hand rubbing her under her clothes. She stated that she told her mother about the incident on the way home from Turney Center that day. Kristen Lloyd testified that her birthday was March 7, 1986 and that she was currently ten years old.

Donna Lloyd testified that she and her daughter, Kristen Lloyd, visited her son at Turney Center on August 5, 1995. She stated that she was sitting in the picnic area outside the visiting gallery when Kristen went inside the visiting gallery for a few minutes and then came back out. She stated that when Kristen came back out, she looked as if she were about to cry. She testified that Kristen told her about the incident after they left Turney Center.

5

Louise Timmons testified that she was at Turney Center Annex on August 12, 1995, visiting her son. She stated that while in the visiting gallery, she saw the defendant sitting at a table with a little boy on his lap. Timmons said the defendant was touching the boy's genitals. She testified that when the defendant noticed that she was watching him, he put the boy down. She related that when she reentered the visiting gallery later that day, she saw the defendant lifting a little girl up to reach the top of a cabinet. She stated that the girl had her feet on the second shelf of the cabinet and her legs were apart. Timmons testified that the defendant had his hands inside the girl's shorts, and he was moving his hand up and down in her genital area. She said that when the defendant realized she was looking at him, he sent the girl outside. She stated that she immediately reported the incident to a guard. Timmons identified the boy as K.B. and the girl as J.B.

Bob Schlafly, an agent with the Tennessee Bureau of Investigation, testified that he investigated the complaints made against the defendant. He stated that he had obtained the birth certificates of K.B. and J.B. from the records division in Nashville, and these were entered into the record as exhibits. These exhibits show K.B.'s date of birth to be June 11, 1988 and J.B.'s date of birth to be November 27, 1989.

Lee Bramlett testified that he is an inmate at Turney Center and that he is the father of K.B. and J.B. He testified that K.B. and J.B. visited him at Turney Center on July 22, August 5, and August 12, 1995. He related that K.B. was eight years old and J.B. was six and one-half at the time of the trial. He stated that when the children visited him, he was with them almost the entire time they were there. He stated that while he was preparing lunch in the picnic area, the children would run into the visitation gallery and then run back out to the picnic area but that they were never in the visitation gallery without him for more than a "split-second." He said that he did not recall K.B.

6

ever sitting on the defendant's lap and that he remembered seeing the defendant pick up J.B. only once while he was standing beside the defendant. He testified that he never saw the defendant have any sexual contact with his children.

Herbert Mays, an inmate at Turney Center, testified that he was president of an inmate organization called P.A.C.E. He stated that P.A.C.E. furnished the toys, coloring supplies, and movies for the kid's corner of the visiting gallery. He testified that the defendant was selected by P.A.C.E. to work in the kid's corner because he had no record of previous sex offenses. He stated that during visitation, an officer would remain in the observation cubicle, and if that officer had to leave, he or she would have another officer come to the observation cubicle. He related that he had visitors almost every Saturday, and he was probably in the visitation area on July 22, August 5, and August 12. He testified that he had never seen the defendant involved in any sexual impropriety.

William Embry, an inmate at Turney Center, testified that he was in the visitation area on July 22 and August 5, 1995. He stated that he generally remained inside the visiting gallery during his visits except that he would eat lunch in the picnic area. He testified that he and his visitors would always sit at a table next to the defendant. He testified that he did not recall the defendant ever sitting down reading to the children.

James Turner, an inmate at Turney Center, testified that he was most likely in and out of the visiting gallery on July 22, August 5 and August 12. He stated that the defendant would sometimes read books to the children. He stated that he had never seen any sexual impropriety on the part of the defendant while he was in the visiting gallery.

7

Pete Lomax, a correctional officer at Turney Center, testified that while monitoring the visiting gallery on August 12, he saw K.B. with the defendant but that he has never seen anything sexual occur between the defendant and K.B. or anyone else. He stated that he never saw Kristin Lloyd close to the defendant. He testified that while on visitation duty, a correctional officer would be in and out of the observation cubicle. He related that because of the number of other responsibilities the officers had while working at the annex and because of the number of inmates and visitors in the visiting gallery, it would be impossible to know everything that occurred during visitation.

Nicky Jordan, an inmate relations coordinator assigned to Turney Center, testified that he was on duty in the visitation area on July 22, 1995. He stated that while he was on duty, he would either be in the picnic area or sitting at the defendant's table because it was beside the window that overlooked the picnic area. He testified that on one occasion while he was sitting at the table with the defendant, K.B. and J.B. ran up to them and climbed onto their laps. He stated that he and the defendant both put the children down. He testified that he then told the defendant that he wished the children would not climb onto their laps because one day someone might get a negative impression. He testified that this was the only occasion that he ever saw a child sit in the defendant's lap. He stated that he did not see the defendant lift J.B. He stated that he had never seen the defendant involved in any misconduct. Jordan testified that he knew that the defendant had lent money to several of the inmates in Turney Center and that the money went to the defendant's family when the inmates paid him back.

At the close of its case-in-chief, the state elected the first incident related by Constance Elaine Allen for count six of the indictment, and the trial judge permitted the state to change the date in count six from July 22 to August 5. Count one of the indictment initially charged the defendant with rape of a child, but the state amended

8

the charge to aggravated sexual battery at the end of its case-in-chief. The jury convicted the defendant of six counts of aggravated sexual battery.

## I. SUFFICIENCY OF THE EVIDENCE

The defendant contends that the evidence fails to show beyond a reasonable doubt that he had sexual contact with any of the victims, although he does not point to any specific shortcoming in the evidence. Aggravated sexual battery is "unlawful sexual contact with a victim by the defendant" when "[t]he victim is less than thirteen (13) years of age." Tenn. Code Ann. § 39-13-504(a)(4).

> "Sexual contact" includes the intentional touching of the victim's, the defendant's, or any other person's intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's, the defendant's, or any other person's intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification.

Tenn. Code Ann. § 39-13-501(6). "'Intimate parts' includes the primary genital area, groin, inner thigh, buttock or breast of a human being." Tenn. Code Ann. § 39-13-501(2).

The standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). This means that we do not reweigh the evidence but presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

Relative to count one of the amended indictment, Kristen Lloyd testified that in August 1995, the defendant touched her "private place" under her clothing.

9

With regard to count two of the indictment, Louise Timmons testified that on August 12, 1995, she saw the defendant touch K.B.'s genitals. Relating to count three of the indictment, Joy Lamberson and Kimberly Brown testified that they saw the defendant touch J.B. under her clothing in the genital area. Relative to count four of the indictment, Louise Timmons testified that on August 12, 1995, she saw the defendant moving his hand up and down inside J.B.'s shorts in her genital area. Regarding count five of the indictment, Joy Lamberson and Kimberly Brown testified that they observed the defendant touching K.B.'s genital area and rubbing his own genital area against K.B.'s bottom. As to count six of the indictment, Constance Elaine Allen testified that on August 5, 1995, she saw the defendant put his hand inside K.B.'s shorts and touch his genitals. Viewing the evidence in the light most favorable to the state, this testimony is sufficient to show that the defendant touched the victims' intimate parts.

The evidence is also sufficient for the jury to conclude that the defendant's purpose for the touching was sexual arousal or gratification. The repetitive nature of the conduct occurring on three different dates with three different victims weighs against accident or inadvertence. See State v. Binion, 947 S.W.2d 867, 872 (Tenn. Crim. App. 1996) (stating that the victim's testimony reflected that the touching was purposeful and not accidental). Also, the very nature of how and where the defendant touched the victims indicates that the touches were for sexual purposes. Furthermore, Louise Timmons testified that when the defendant noticed that she was watching him touch K.B.'s genitals, he put K.B. down from his lap. She also stated that when the defendant realized that she had seen him touching J.B.'s genital area, he sent J.B. outside. From this evidence, the jury could reasonably infer that the defendant did not want anyone to see him touching the children in this way. In State v. Hayes, 899 S.W.2d 175, 179 (Tenn. Crim. App. 1995), this court held that one factor from which the jury could infer the defendant's purpose of sexual gratification was the timing of the incidents--the fact that the defendant waited until the victim's mother was out of the house. In the present

case, the fact that the defendant wanted to touch the victims when no one was looking shows that his purpose was for sexual arousal or gratification. Thus, the evidence is sufficient to support the convictions.

## II. SEPARATE OFFENSES

The defendant contends that the trial court erred in denying his motion for a judgment of acquittal because the evidence relative to counts two and six merely corroborates the offense charged in count five, and the evidence relative to count four merely corroborates the offense charged in count three. Thus, the defendant argues that counts two, five and six are really the same incident and that counts three and four are the same incident. The defendant argues that to be charged and convicted multiple times for these two incidents violates the double jeopardy and due process provisions of the United States and Tennessee Constitutions.

In reviewing a motion for a judgment of acquittal, the standard for the appellate court is the same as that for the trial court when considering the motion at the close of evidence. The court must evaluate the evidence in the light most favorable to the state, draw "all reasonable and legitimate inferences . . . from the evidence . . . in favor of the state's theory" and dismiss all conflicting evidence presented by the defense. State v. Adams, 916 S.W.2d 471, 473 (Tenn. Crim. App. 1995); see State v. Thompson, 549 S.W.2d 943, 946 (Tenn. 1977). The defendant seeks to have this court disregard the testimony as to the dates that the witnesses saw the defendant commit the offenses when considering the similarity of the offenses in the separate counts. The state's witnesses testified to the specific dates on which they observed the defendant commit the offenses. They were separate dates. Viewing this evidence in the light most favorable to the state, the trial court properly denied the defendant's motion for a judgment of acquittal.

## III. MAXIMUM AND CONSECUTIVE SENTENCES

At the sentencing hearing, the trial court sentenced the defendant as a Range III, persistent offender to the maximum sentence of thirty years per count. The trial court ordered the defendant to serve all six thirty-year sentences consecutively to each other for a total sentence of one hundred eighty years. The trial court ordered the defendant to serve the sentences consecutively to the sentences he is currently serving in the Department of Correction.

Appellate review of sentencing is <u>de novo</u> on the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d). As the Sentencing Commission Comments to this section note, the burden is now on the defendant to show that the sentence is improper. This means that if the trial court follows the statutory sentencing procedure, makes findings of fact that are adequately supported by the record and gives due consideration and proper application of the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result is preferable. <u>State v. Fletcher</u>, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

"However, the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." <u>State v. Ashby</u>, 823 S.W.2d 166, 169 (Tenn. 1991). In this respect, for the purpose of meaningful appellate review,

> the trial court must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. Tenn. Code Ann. § 40-35-210(f).

<u>State v. Jones</u>, 883 S.W.2d 597, 599 (Tenn. 1994).

12

The sentence to be imposed by the trial court for a Class B felony is presumptively the minimum in the range unless there are enhancement factors present. Tenn. Code Ann. § 40-35-210(c). Procedurally, the trial court is to increase the sentence within the range based upon the existence of enhancement factors and, then, reduce the sentence as appropriate for any mitigating factors. Tenn. Code Ann. § 40-35-210(d),(e). For the purpose of appellate review, the trial court must preserve in the record the factors it found to apply and the specific findings of fact upon which it applied the sentencing principles to arrive at the sentence. See Tenn. Code Ann. § 40-35-209(c), 210(f).

## A. MAXIMUM SENTENCE

The defendant argues that the trial court erred in rejecting two of the mitigating factors he presented at the sentencing hearing. For this reason, the defendant contends that the trial court abused its discretion in sentencing him to the maximum sentence or to any term in excess of twenty years for each count.

As a Range III, persistent offender convicted of a Class B felony, the possible range of punishment for the defendant was twenty to thirty years. See Tenn. Code Ann. § 40-35-112(c)(2). The trial court imposed the maximum sentence of thirty years, finding the following three enhancement factors as listed in Tenn. Code Ann. § 40-35-114:

> (1) The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range;
>
> (6) The personal injuries inflicted upon . . . the victim [were] particularly great; [and]
>
> (15) The defendant abused a position of public or private trust
> . . . .

Through our de novo review of the record, we believe that the trial court properly applied factors (1) and (15) but erred by applying factor (6).

13

With regard to enhancement factor (1), the trial court found that the defendant had an extensive history of criminal convictions well beyond that needed to qualify him as a Range III, persistent offender. Certified copies of prior convictions show the defendant had been convicted in 1989 of two counts of grand larceny, a Class D felony; sixteen counts of obtaining money in an amount over two hundred dollars under false pretenses, a Class D felony; seven counts of the attempt to obtain money by false pretenses, a Class E felony; and twenty-five counts of mishandling a dead body, a misdemeanor. The defendant committed the offenses over a number of years, and they arose from the defendant's involvement in the funeral business. The presentence report also reflects that the defendant was convicted in 1979 of one count of larceny of drugs[2] and two counts of possession of schedule II drugs for resale, a Class C felony. Needless to say, factor (1) is entitled to considerable weight.

Enhancement factor (6) requires a finding that the personal injury suffered by the victim was particularly great. Every instance of sexual battery presents the potential for mental and physical injury, and the legislature considered the trauma inherent within these acts when it placed sexual battery within the second highest felony class. State v. Kissenger, 922 S.W.2d 482, 487 (Tenn. 1996). Also, a child victim's age alone does not render the injuries received particularly great because the legislature has already factored in the victim's age as an aggravating factor in aggravated sexual battery. See State v. Melvin, 913 S.W.2d 195, 204 (Tenn. Crim. App. 1995). For enhancement factor (6) to apply, the injuries to the victims must be greater than those which ordinarily occur in this type of crime. State v. Hoyt, 928 S.W.2d 935, 948 (Tenn. Crim. App. 1995); Melvin, 913 S.W.2d at 204.

With regard to enhancement factor (6), the trial court cited no evidence to show that the victims have experienced any psychological injury. The trial court stated

_____

[2]The presentence report does not indicate the monetary value of these stolen drugs, and a judgment for this conviction is not contained within the record.

14

that when sexual battery is committed upon victims under thirteen years of age, "that's generally deemed more than enough proof to show psychological or personal injury as opposed to bodily injury." Though psychological and emotional injury do constitute personal injury under Tenn. Code Ann. § 40-35-114(6), the state has the burden of proving that these types of injuries were "particularly great" before this factor can apply. Hoyt, 928 S.W.2d at 948. In the present case, the trial court cited no specific facts to support this enhancement factor, and we find none in the record. We note, though, that the trial court gave this factor little weight.

Enhancement factor (15) applies when the defendant abuses a position of public or private trust. A position of trust exists when the defendant's formal or informal relationship with the victim "promoted confidence, reliability, or faith." Kissenger, 922 S.W.2d at 488. The trial court found enhancement factor (15) to be supported by trial testimony which established that the defendant was put in charge of the kid's corner by an inmate organization called P.A.C.E. that sought to facilitate interaction between the inmates and their children. In this capacity, the defendant met with the visiting children who relied upon him to distribute books and coloring supplies and to operate the television. We believe that factor (15) applies.

The trial court rejected the mitigating factors offered by the defendant at the sentencing hearing, finding that no mitigating factors existed. The defendant argued that his criminal conduct did not cause or threaten serious bodily injury. See Tenn. Code Ann. § 40-35-113(1). While noting that it was not using bodily injury as an enhancing factor, the trial court stated:

> I can't say unequivocally that your conduct did not cause or threaten bodily injury. You have been convicted of six counts. I have no way of knowing what other things might have or could have taken place had you not been observed or caught.

15

The trial court did not refer to any factual findings as to bodily injury. The trial court may not use speculation about unproven or potential crimes to reject the defendant's mitigating factor. In State v. Hayes, 899 S.W.2d 175, 187 (Tenn. Crim. App. 1995), the defendant was convicted of aggravated sexual battery for touching his twelve-year-old daughter's breast once on the outside of her clothing and once under her clothing. This court concluded that the defendant should have received the benefit of mitigating factor (1) because his criminal conduct was not aggravated. Id. at 179. Likewise, in the instant case, there was no evidence that the defendant caused or threatened bodily injury. Thus, mitigating factor (1) should have been weighed in establishing the sentence.

The defendant also offered his college education and post-graduate training in embalming as a mitigating factor. See Tenn. Code Ann. § 40-35-113(13). The trial court rejected this factor, finding that the defendant's education was a factor weighing against him rather than for him because he used this training in the field of undertaking to perpetrate the crimes for which he was serving his initial sentence. This finding is supported by the certified copies of the defendant's prior convictions and by the presentence report. As previously noted, it is within the trial court's discretion to determine the weight to be afforded an existing factor so long as the purposes and principles of the 1989 Sentencing Act are served, and the trial court's findings are adequately supported by the record. Tenn. Code Ann. § 40-35-210, Sentencing Commission Comments; Moss, 727 S.W.2d at 237; see Ashby, 823 S.W.2d at 169. We do not believe that the trial court abused its discretion. Although we agree with the defendant that the absence of actual or threatened serious bodily injury should have been considered as a mitigating factor, we believe that even considering this factor, the record fully supports the trial court's imposition of thirty-year sentences.

## B. CONSECUTIVE SENTENCING

The defendant contends that the trial court erred in ordering the sentences to be served consecutively to each other and to his previous sentences. The defendant claims that the criteria relied upon by the trial court in ordering the consecutive sentences was not established by a preponderance of the evidence.

Consecutive sentencing is guided by Tenn. Code Ann. § 40-35-115(b), which states in pertinent part:

> The court may order sentences to run consecutively if the court finds by a preponderance of the evidence that:
>
> (1) The defendant is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood;
>
> (2) The defendant is an offender whose record of criminal activity is extensive; [or]
>
> . . . .
>
> . . . .
>
> (5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and the victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victims.

Also, "consecutive sentences cannot be imposed unless the terms reasonably relate to the severity of the offenses committed and are necessary in order to protect the public from further serious criminal conduct by the defendant." State v. Wilkerson, 905 S.W.2d 933, 938 (Tenn. 1995).

In the present case, the trial court found the defendant to be a professional criminal devoting himself to criminal acts as a major source of livelihood. See Tenn. Code Ann. § 40-35-115(1). To support this finding, the trial court cited this court's approval of such status assigned to the defendant by the Robertson County trial

court regarding his 1989 convictions. Looking to the former convictions, the trial court had already noted, with regard to the enhancement factor (1), that the offenses occurred over a sustained period of time and represented an elaborate process of defrauding persons and treating inappropriately both the deceased and their families who were grieving. With respect to the defendant's education, the trial court recognized that the defendant had used the profession of undertaking to abuse the rights of others. As the trial court noted, though, the defendant had not been a professional criminal for the years he had served in prison. The record reflects that at the time of sentencing, the defendant had been incarcerated for about eight years. Needless to say, the defendant has not knowingly devoted the past eight years to criminal acts as a major source of his livelihood. Given the amount of time that has elapsed since the defendant was proven to have devoted himself to criminal acts as a major source of livelihood, we do not believe that the defendant was shown to be a professional criminal for the purposes of sentencing in this case. In any event, the record reflects that the trial court's sentencing determination would have been the same regardless of the finding under subsection (1).

The trial court found that the defendant had an extensive criminal record. See Tenn. Code Ann. § 40-35-115(2). The trial court had explored this criminal record when discussing enhancement factor (1), finding that over forty convictions remained after excluding the five used to determine the defendant's sentencing range. The presentence report and the certified copies of the defendant's prior convictions overwhelmingly support this finding.

Finally, the trial court found that the defendant had been convicted of two or more offenses involving sexual abuse of a minor and that the relationship between the defendant and the victims presented an aggravating circumstance. See Tenn. Code Ann. § 40-35-115(5). The court stated that the defendant held a position of

responsibility with respect to the kid's corner. That position was given to him by his fellow inmates, and it gave him special rights to contact with these children. In Hayes, this court found that although the state argued that a relationship existed because the defendant was the victim's father, the remaining elements of subsection (5) were not met. 899 S.W.2d at 187. "There was no significant time span of undetected sexual activity, the nature of the criminal conduct was nonaggravated, and the extent of residual damage to the victim caused by the conduct is not sufficiently shown." Id. The present case mirrors Hayes. The offenses occurred on three Saturdays in a four week time span, the criminal conduct was similarly nonaggravated, and no residual damage has been presented. Furthermore, the relationship between the defendant and the victims in the instant case is even more attenuated than in Hayes. The record does not support a finding under subsection (5).

We conclude that the record supports the trial court's findings under subsection -115(2). However, the record reflects that the trial court did not consider the presence of other factors that are necessary in order to impose consecutive sentences. As previously noted, our supreme court has mandated that "consecutive sentences cannot be imposed unless the terms reasonably relate to the severity of the offenses committed and are necessary in order to protect the public from further serious criminal conduct by the defendant." Wilkerson, 905 S.W.2d at 938. Also, pursuant to Rule 32(c)(1), Tenn. R. Crim. P., the trial court must "specifically recite the reasons" behind its imposition of a consecutive sentence. Such was not done in this case. Thus, our review of consecutive sentencing is de novo without a presumption that the trial court's determinations are correct.

As the state suggests, the trial court's comments about the nature and circumstances surrounding the offenses can be interpreted to mean that the court believed that the public needed to be secure from the defendant's future criminal

19

conduct. However, there is nothing to justify a one hundred eighty-year sentence for public security nor is there any indication that such an effective sentence carries any reasonable relationship to the severity of the offenses committed.

"The sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(4). The circumstances surrounding the offenses and the extent of the defendant's criminal history justify a substantial sentence, but under all of the circumstances, we conclude that a sentence of sixty years will protect the public and adequately reflect the severity of the defendant's offenses. In this respect, we note that we may consider whether or not the effective, total sentence will meet the principles and purposes of the 1989 Sentencing Act when assessing what weight to apply to those factors which affect both the length of each sentence for the involved offenses and the consecutive sentencing decision. See State v. Marshall, 888 S.W.2d. 786, 788 (Tenn. Crim. App. 1994). We conclude that the thirty-year sentences imposed for the convictions on counts one, two, and three are to be served concurrently with each other. The thirty-year sentences for the convictions in counts four, five, and six are to be served concurrently to each other but consecutively to counts one through three. The sentences shall be served consecutively to the defendant's previously imposed sentences.

**IV. FINES**

The defendant contends that the trial court erred in approving and adopting the maximum fine of twenty-five thousand dollars for each of the six counts as set by the jury. He asserts that (1) the trial court declared him to be indigent, (2) he has been incarcerated since November 2, 1988, (3) he presently has no assets and no liabilities, and (4) he faces lengthy incarceration under the trial court's sentence in this

20

case. For these reasons, the defendant contends the fines are excessive and should be eliminated.

The appellate court has the authority to review fines as a part of the sentence. State v. Bryant, 805 S.W.2d 762, 767 (Tenn. 1991). The appellate court's review of the sentence is de novo with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d). The defendant's ability to pay is a factor to weigh in setting the fine. State v. Alvarado, 961 S.W.2d 136, 153 (Tenn. Crim. App. 1996). However, it is not a controlling factor.

> [A]n oppressive fine can disrupt future rehabilitation and prevent a defendant from becoming a productive member of society. . . . . However, a significant fine is not automatically precluded just because it works a substantial hardship on a defendant--it may be punitive in the same fashion incarceration may be punitive.

State v. Marshall, 870 S.W.2d 532, 542 (Tenn. Crim. App. 1993).

Although the jury is to "fix" the amount of the fine and report it with a guilty verdict, it is the trial court's obligation to impose a fine not to exceed that fixed by a jury as part of the sentence. See Tenn. Code Ann. § 40-35-301(b); See State v. Blevins, 968 S.W.2d 888, 895 (Tenn. Crim. App. 1997). The trial court's imposition of a fine should be based upon the factors and principles of the 1989 Sentencing Act, such as prior history, potential for rehabilitation, financial means, and mitigating and enhancing factors relevant to an appropriate, total sentence. See Bryant, 805 S.W.2d at 766. In the present case, the trial court merely adopted the fines imposed by the jury without further discussion or consideration. As previously noted, failure to follow the procedures required by the 1989 Sentencing Act results in our reviewing the matter de novo without a presumption that the trial court is correct.

The trial court did not discuss the defendant's financial means or his potential for rehabilitation. In his Uniform Affidavit of Indigency, the defendant stated

that he makes thirty-four cents per hour for six hours a day at Turney Center where he has been incarcerated since 1988. In this document, the defendant also related that he has no assets and has not filed an income tax return since 1986. The defendant was declared indigent and appointed counsel at his indigency hearing on February 20, 1996. We note, though, that a witness testified at the trial that the defendant was known as a "money lender" to other inmates. However, the record contains no other indication that he had any financial means.

The record does not support a conclusion that the defendant has the ability to pay a substantial fine. However, as previously noted, this does not mean that we cannot impose a meaningful fine due to the defendant's indigency. In consideration of all the circumstances of this case, including the defendant's personal circumstances, we impose a fine of five thousand dollars for each of the six counts for a total of thirty thousand dollars.

In consideration of the foregoing and the record as a whole, the defendant's convictions for aggravated sexual battery are affirmed. The thirty-year sentences imposed in counts one through three are affirmed, but they are to be served concurrently with each other. The thirty-year sentences for counts four through six are affirmed and are to be served concurrently with each other but consecutively to the sentences for counts one through three for an effective sentence of sixty years. All the sentences are to be served consecutively to the defendant's previously imposed sentences. The defendant shall be fined five thousand dollars on each count for a total fine of thirty thousand dollars.

                                                    _____

                                                    Joseph M. Tipton, Judge

CONCUR:

_____
David H. Welles, Judge


_____
David G. Hayes, Judge