IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
September 11, 2001 Session

**STATE OF TENNESSEE v. DALE GODWIN**

**Direct Appeal from the Circuit Court for Obion County
Nos. 9654, 9655, 9656, 9713     William B. Acree, Judge**

_____

**No. W2001-00212-CCA-R3-CD - Filed December 14, 2001**

_____

In 1995, the Defendant pled guilty to four felony drug charges for which he received three concurrent eight-year sentences and one concurrent five-year sentence, to be served on Community Corrections. Subsequently, the trial court revoked the Defendant's Community Corrections sentences and ordered him to serve twelve years in the Tennessee Department of Correction. The Defendant now appeals, alleging that the trial court lacked jurisdiction to re-sentence the Defendant and that the twelve year sentence was improperly imposed. Finding no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which THOMAS T. WOODALL and NORMA MCGEE OGLE, JJ., joined.

Victor L. Ivy and Danny R. Ellis (on appeal), Jackson, Tennessee; and Kevin McAlpin, Assistant District Public Defender (at trial), Dresden, Tennessee, for the Appellant, Dale Godwin.

Paul G. Summers, Attorney General and Reporter; Kim R. Helper, Assistant Attorney General; Thomas A. Thomas, District Attorney General; James T. Cannon, Assistant District Attorney General; and James David Kendall, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

I.  FACTS

On February 7, 1995, the Obion County Grand Jury indicted the Defendant for three counts of selling .5 grams or more of cocaine, a Class B felony; one count of possession with intent to sell cocaine, a Class C felony; and one count of public intoxication, a Class C misdemeanor.

On February 27, 1995, the Defendant pled guilty to the three charges of selling cocaine and was sentenced to eight years for each conviction, to be served on Community Corrections with

Westate Corrections Network. The trial court ordered that each of the eight-year sentences run concurrently with the others. In addition, each judgment indicates that the Defendant was to serve six months in jail. The Defendant also pled guilty to the Class C felony charge of possession of cocaine with intent to sell and received a five-year sentence with Westate Corrections Network. The Defendant was ordered to serve six months in jail, and the sentence was to be served concurrently with the other three sentences.

Subsequently, a Community Corrections violation report was filed alleging that on March 8, 1998, the Defendant was arrested and charged with DUI and evading arrest. Westate Corrections Network filed a petition requesting a criminal summons be issued for the Defendant. The trial court entered an order on June 16, 1998, issuing a criminal summons for the Defendant and setting a hearing on the Community Corrections violation for June 22, 1998. There is no indication in the record that the Defendant was ever served with the summons or that a hearing was held. On November 22, 2000, a supplemental Community Corrections violation report was filed, alleging that on November 16, 2000, the Defendant was found guilty in the Obion County General Sessions Court of evading arrest. Again, pursuant to a petition filed by Westate Corrections Network, the trial court ordered the issuance of a capias for the arrest of the Defendant. At the time of the order, the Defendant was being held in the Obion County Jail, and the capias was served.

On December 8, 2000, the trial court conducted a hearing and determined that the Defendant had violated the terms of his Community Corrections sentence. A sentencing hearing was held on January 12, 2001, at which time the trial court sentenced the Defendant to twelve years in the Tennessee Department of Correction on each of the three Class B felonies, with the sentences to run concurrently, and six years in the Tennessee Department of Correction for the Class C felony conviction, also to run concurrently with the other charges.

## II. ANALYSIS

### A. Jurisdiction to Re-sentence

There are four judgments in this case, three for selling .5 grams or more of cocaine, a Class B felony and one for possession with intent to sell cocaine, a Class C felony. Each judgment is dated February 27, 1995, and indicates that the Defendant is sentenced to a "community based alternative," in addition to a six-month county jail sentence. Each judgment specifies "Westate Corrections Network" as the community based alternative. Each judgment for a Class B felony contains in the "Special Conditions" portion of the judgment the following language: "8 years W/WCN to serve 6 months in Cty Jail." The judgment for the Class C felony specifies "5 years W/WCN to serve 6 months in Cty Jail."

In a subsequent order dated March 11, 1995, the following language appears:
In this cause, the Court has sentenced the Defendant to the State Penitentiary and has found the Defendant unsuitable for state probation. The Court finds the Defendant to be a suitable candidate for intensive supervision in Community Corrections.

IT IS THEREFORE, ORDERED, by the Court that the Defendant be sentenced to the Community Corrections Program in the 27th Judicial District for a period of 8 years and to be credited with 144 days on his sentence.

The Defendant argues that the trial court sentenced him to the state penitentiary and therefore had no jurisdiction to increase the length of the Defendant's sentence. The State argues in its brief that the trial court "effectively suspended service in the state penitentiary in favor of the community corrections program." We agree with the State. In our view, the judgments filed on February 27, 1995 control the Defendant's sentences, and these judgments clearly indicate sentences to be served on Community Corrections rather than in the state penitentiary. The order of March 11, 1995 appears to be a "fill in the blank" form order for Community Corrections cases in Obion County. The judgments are controlling as to the terms and conditions of the Defendant's original sentences, and the Defendant's argument that the trial court lacked jurisdiction to increase the length of the sentences after revoking the Community Corrections sentences is without merit.

## B. Re-sentencing

Assuming that a new sentencing hearing is conducted, a trial court generally has the authority to increase the length of a revoked Community Corrections sentence up to the maximum sentence within the appropriate sentence range for the offense. State v. Samuels, 44 S.W.3d 489, 493 (Tenn. 2001); see also Tenn. Code Ann. § 40-36-106(e)(2). The trial court in this case conducted a "new" sentencing hearing on January 12, 2001.

The Defendant argues that the trial court was predisposed to imposing the maximum sentence based on comments it made during the violation hearing on December 8, 2000. At that time, the following exchange occurred between the trial court and counsel:

**Mr. McAlpin**: Your Honor, it's going to be a plea of guilty, but I would at least like to argue.
**The Court**: Well, let me tell you this before you do that. I'm going to order a sentencing hearing in this case and consider increasing his sentence. Isn't eight years the controlling sentence in a Class B felony?
**General Kendall**: Yes, Your Honor, I believe that is the controlling - - -
**The Court**: And I think this is one of these deals he probably figured he'd be getting out a lot quicker if he goes to the Department of Correction, and I'm not so sure that's the proper thing to do. I can increase his sentence of 12 years, provided the evidence at the sentencing hearing justified it. So, I'm going to order a sentencing hearing in this case. If you want to talk with him before he enters a plea of guilty, you can do so.

The State argues in its brief that the trial court was "merely informing defense counsel of all of the available options, prior to entry of a guilty plea." We agree. In our view, the comments by the trial court do not indicate a predisposition to sentence the Defendant to the maximum sentence of twelve years. The trial judge is, in our view, merely discussing the range of possible outcomes in this case. We note that the trial judge said that he would " . . . consider increasing [the

Defendant's] sentence." (Emphasis added). He also stated, "I <u>can</u> increase his sentence of twelve years, <u>providing the evidence at the sentencing hearing justified it</u>." (Emphasis added). This language clearly indicates that the trial court had no predisposition other than to consider all of the appropriate options at a sentencing hearing to be set at a later date.

Concerning the propriety of the "new" sentences imposed, our analysis begins with well-settled principles that govern our review of a sentence determination imposed under the Criminal Sentencing Reform Act of 1989. When a criminal defendant challenges the length, range, or manner of service of a sentence, the reviewing court must conduct a <u>de novo</u> review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption, however, "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." <u>State v. Ashby</u>, 823 S.W.2d 166, 169 (Tenn. 1991). In the event that the record fails to show such consideration, the review of the sentence is purely <u>de novo</u>. <u>State v. Shelton</u>, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992).

In making its sentencing determination, the trial court, at the conclusion of the sentencing hearing, determines the range of sentence and then determines the specific sentence and the propriety of sentencing alternatives by considering (1) the evidence, if any, received at the trial and the sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct involved, (5) evidence and information offered by the parties on the enhancement and mitigating factors, (6) any statements the defendant wishes to make in the defendant's behalf about sentencing, and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-210(a), (b), -103(5); <u>State v. Williams</u>, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995).

The presumptive sentence to be imposed by the trial court for a Class B, C, D or E felony is the minimum within the applicable range unless there are enhancement or mitigating factors present. Tenn. Code Ann. § 40-35-210(c). If there are enhancement or mitigating factors, the court must start at the presumptive sentence, enhance the sentence as appropriate for the enhancement factors, and then reduce the sentence in the range as appropriate for the mitigating factors. <u>Id.</u> § 40-35-210(e). The weight to be given each factor is left to the discretion of the trial judge. <u>Shelton</u>, 854 S.W.2d at 123. However, the sentence must be adequately supported by the record and comply with the purposes and principles of the 1989 Sentencing Reform Act. <u>State v. Moss</u>, 727 S.W.2d 229, 237 (Tenn. 1986).

When imposing a sentence, the trial court must make specific findings of fact on the record supporting the sentence. Tenn. Code Ann. § 40-35-209(c). The record should also include any enhancement or mitigating factors applied by the trial court. <u>Id.</u> § 40-35-210(f). Thus, if the trial court wishes to enhance a sentence, the court must state its reasons on the record. The purpose of recording the court's reasoning is to guarantee the preparation of a proper record for appellate review. <u>State v. Ervin</u>, 939 S.W.2d 581, 584 (Tenn. Crim. App. 1996). Because the record in this

case indicates that the trial court adequately considered the enhancement and mitigating factors as well as the underlying facts, our review is de novo with a presumption of correctness.

If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence "even if we would have preferred a different result." State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). The defendant bears the burden of showing the impropriety of the sentence imposed. Ashby, 823 S.W.2d at 169.

In sentencing the Defendant, the trial court applied enhancement factor (1), that "[t]he [D]efendant has a previous history of criminal convictions or criminal behavior," Tenn. Code Ann. § 40-35-114(1); and enhancement factor (8), that "[t]he [D]efendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community . . . ." Id. § 40-35-114 (8). Thus, the trial court found that two enhancing factors applied in sentencing the Defendant. Additionally, the trial court found that no mitigating factors applied.

We agree with the trial court concerning both of the enhancement factors applied in this case. The record does indicate that the Defendant has a previous history of criminal convictions or criminal behavior. After initially being sentenced to Community Corrections, the Defendant was convicted for driving under the influence, public intoxication, and twice for evading arrest. The pre-sentence report indicates a prior conviction for possession of a weapon by a convicted felon. Additionally, as the State points out in its brief, there are two juvenile adjudications that the trial court apparently did not consider but could have properly considered as an enhancement factor under Tennessee Code Annotated § 40-35-114(20).

In order for enhancement factor (8) to apply, the State must prove that the defendant "has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community." Tenn. Code Ann. § 40-35-114(8) (1997). In State v. Adams, 45 S.W.3d 46 (Tenn. Crim. App. 2000), this Court addressed a case wherein the defendant challenged, inter alia, the trial court's application of enhancement factor (8) to his sentences for offenses that he committed while on probation. Finding factor (8) inapplicable, we held as follows:

> [The defendant] argues that the trial court should not have considered his previous unwillingness to comply with a sentence involving release in the community. The record reflects that the trial court applied this factor because [the defendant] was on probation at the time he committed the present offenses. We hold that the trial court erred by applying the enhancement factor. The commission of the offense for which the defendant is being sentenced does not make factor (8) applicable because there must be a *previous* history of unwillingness to comply.

Adams, 45 S.W.3d at 60 (citing State v. Hayes, 899 S.W.2d 175, 185-86 (Tenn. Crim. App. 1995)). Similarly, in Hayes this Court noted that "the commission of the offense for which a defendant is

being sentenced should not make factor (8) applicable, . . . there must be a previous history of unwillingness." Hayes, 899 S.W.2d at 186. (Emphasis in original).

In the case sub judice, Defendant was resentenced pursuant to the provisions of the Community Corrections Act found in Tennessee Code Annotated section 40-36-106(e)(4). Under Hayes and Adams, if the commission of the offenses for which Defendant was being resentenced had been committed while he was on probation or some other form of release, factor (8) would clearly not be applicable. Initially, it might be said that factor (8) would likewise be inapplicable in a situation identical to this case, where the defendant commits various crimes while being released under the Community Corrections Act. In other words, the proper question is, did the crimes committed by Defendant while on community corrections constitute a "previous history" of unwillingness to comply with the conditions of release in the community? Thus, the issue to be resolved by this Court is whether the "previous history" means a history previous to the commission of the *offense*, or previous to the *sentencing hearing*. Clearly, when the trial court initially sentences a defendant for a crime, Hayes and Adams state that the commission of the offense for which the sentence is being imposed cannot be used to establish factor (8).

However, upon examining Tennessee Code Annotated section 40-36-106(e)(4), it may be concluded that a defendant's "previous history" upon resentencing after revocation of community corrections can include conduct by the defendant while serving the community corrections sentence. Tennessee Code Annotated section 40-36-106(e)(4) states as follows:

> The court shall also possess the power to revoke the sentence imposed at any time *due to the conduct of the defendant* or the termination or modification of the program to which the defendant has been sentenced, and the court may resentence the defendant to any appropriate sentencing alternative, including incarceration, *for any period of time up to the maximum sentence provided for the offense committed*, less any time actually served in any community-based alternative to incarceration.

(Emphasis added).

Upon revocation of a community corrections sentence, whenever the trial court opts to impose a sentence which exceeds the length of the initial sentence, a sentencing hearing pursuant to the principles of the Sentencing Reform Act must be conducted. State v. Crook, 2 S.W.3d 238, 240 (Tenn. Crim. App. 1998). If the sentence is increased, the trial court must find that appropriate enhancement factors exist. The trial court cannot arbitrarily establish the length of a new sentence, and an increase in the sentence cannot be used for the sole and exclusive purpose of punishing a defendant for violating the provisions of a community corrections sentence. State v. Cooper, 977 S.W.2d 130, 132 (Tenn. Crim. App. 1998) (citing State v. Ervin, 939 S.W.2d 581 (Tenn. Crim. App. 1996)).

We conclude that facts which have developed between the time a defendant is initially sentenced to community corrections, and the time that the sentence is subsequently revoked, may be considered in applying enhancement factors and increasing a sentence. If this conclusion was

incorrect, then upon revocation of community corrections, a sentence could be increased based only upon facts which existed prior to the date of the original sentencing.

While such "unused" enhancement factors might exist in a situation where the defendant entered into a negotiated plea agreement for a minimum sentence to be served on community corrections, likely, there would be no such "unused" enhancement factors existing in an original sentence imposed by the trial court after a sentencing hearing. Furthermore, Tennessee Code Annotated section 40-36-106(e)(4), which permits the increase in a sentence following revocation, does not specifically limit the use of enhancement factors to those which existed prior to the original sentencing.

In this case, *commission* of the offenses for which Defendant was being sentenced were not used to show that Defendant had a previous history of unwillingness to comply with the conditions of a sentence involving release into the community. Since the statute allows for an increase in the length of the sentence upon revocation of community corrections sentencing, and the statute does not specifically limit consideration to the enhancement factors that existed at the time of the original sentence, we conclude that conduct of the Defendant while serving a community corrections sentence can be used to establish the applicability of enhancement factor (8).

The Defendant does not challenge the sentences of confinement, but does challenge the enhanced lengths of the sentences. We conclude that the trial court followed the principles of the Sentencing Reform Act of 1989 and that the lengths of the sentences imposed were appropriate.

In consideration of the foregoing and the record as a whole, we <u>affirm</u> the judgments of the trial court.

 

 

 

_____
ROBERT W. WEDEMEYER, JUDGE