IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 21, 2003

## STATE OF TENNESSEE v. CARLOS CAUDILL

**Direct Appeal from the Criminal Court for Claiborne County**
**No. 11771     E. Shayne Sexton, Judge**

---

**No. E2002-02339-CCA-R3-CD**
**August 13, 2003**

---

Defendant, Carlos Caudill, was indicted by the Claiborne County Grand Jury for second degree murder. On December 18, 2001, Defendant entered a guilty plea as a Range II multiple offender to voluntary manslaughter, with the length and manner of service of his sentence to be determined by the trial court. Following a sentencing hearing, the trial court sentenced Defendant to nine years imprisonment. Defendant appeals the length and manner of service of his sentence. We find no error and affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOE G. RILEY and JAMES CURWOOD WITT, JR., JJ., joined.

Timothy P. Webb, Jacksboro, Tennessee, for the appellant, Carlos Caudill.

Paul G. Summers, Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; William Paul Phillips, District Attorney General; Jared Effler, Assistant District Attorney General, for the appellee, the State of Tennessee.

### OPINION

At approximately 10:00 p.m., on February 17, 2001, Defendant shot and killed the victim, William Frick, inside Defendant's home. Defendant and the victim were neighbors, and the victim "appeared to have entered [Defendant's] residence for reasons unknown." Defendant then kicked the victim in the head and placed a crowbar beside him on the floor. Defendant and his girlfriend fled the home on foot and went to a relative's home a half a mile away. Defendant used the relative's telephone to call friends in Kentucky and asked them to assist him in removing the victim's body from his home. Defendant's friends denied his request, and Defendant then called 911. Mr. Frick died from a gunshot wound to the chest.

This summary of facts is taken from the presentence report. At the guilty plea hearing, no witnesses testified to the facts of the homicide. The State and Defendant stipulated that the prosecution would prove beyond a reasonable doubt, through its witnesses, that Defendant committed second degree murder. At the submission hearing, Defendant told the trial court that the prosecutor's statement was, in fact, correct.

According to Defendant's version of the facts in the presentence report, Mr. Frick "broke into [his] home," and Defendant asked him to leave. The victim was carrying a crowbar in his hand. The victim did not leave Defendant's home, and Defendant "felt threatened" and shot him "one time with a .38 [caliber] revolver." After Defendant shot the victim, he "then kicked him and searched him for another weapon." Defendant "then walked to a relative's home and called 911 to report what [he] had done." Defendant told investigators that he shot the victim in self-defense, "protecting [him]self and [his] family." Defendant further stated in the presentence report:

> However, during my time in jail, I have realized two things. One, I should have never had a gun for any reason, and had I not had one, I may have reacted in a different way, and two, if I had to defend myself and my home, it shouldn't have resulted in the death of Bill Frick. I see no reason why this event would ever repeat itself, nor any reason I would have to violate probation or parole. In the future, my home will be protected by a security system rather than an illegal weapon and a violent temper.

On April 2, 2002, the trial court conducted a sentencing hearing. Timothy Adams, a probation and parole officer for the state of Kentucky, testified that he supervised Defendant while he was on probation for prior convictions. Adams testified that Defendant "appeared to be polite and cooperative." He testified, however, that Defendant absconded from probation in October of 1998 and further violated the conditions of his probation by failing to report a change in residence, failing to report as directed, and failing to pay court ordered fees.

Defendant testified at the sentencing hearing that on the night of the offense, he woke up and found the victim standing in his living room. Defendant testified that the victim "was not welcome in [his] home." Defendant testified that he "did just like anyone else would've done in the whole world [and] defended [his] home." Defendant also testified that he failed to comply with the conditions of his probation for the prior felony convictions in Kentucky.

At the conclusion of the sentencing hearing, the trial court applied three enhancement factors: (a) that Defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community, Tenn. Code Ann. § 40-35-114(9) (Supp. 2002); (b) that Defendant employed a firearm during the commission of this offense, Tenn. Code Ann. § 40-35-114(10) (Supp. 2002); and (c) that the felony was committed while Defendant was on probation for a prior felony conviction, Tenn. Code Ann. § 40-35-114(14)(C) (Supp. 2002).

The trial court declined to apply mitigating factors (2) and (3). *See* Tenn. Code Ann. § 40-35-113 (1997). The trial court found that Defendant acted "under a state of passion not sufficient to support self-defense, but sufficient to make a person act irrationally. . . . [However], that is reflected in the plea so I'm not going to give that any weight. I think that the weight, the appropriate weight has already been given by this Court and by the parties in their recommendation on the charge." The trial court found evidence to support mitigating factor (11), that the defendant, although guilty of the crime, committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the criminal conduct. *See* Tenn. Code Ann. § 40-35-113 (1997). Although not a statutory mitigating factor, the trial court also considered Defendant's genuine remorse for the offense. *See State v. Williamson*, 919 S.W.2d 69, 83 (Tenn. Crim. App. 1995).

The range of punishment for voluntary manslaughter, a Class C felony, is six to ten years for a Range II multiple offender. Tenn. Code Ann. §§ 39-13-211(b), 40-35-112(b)(3) (1997). If no mitigating or enhancement factors are present, the presumptive sentence for a Class C felony shall be the minimum sentence within the applicable range. Tenn. Code Ann. § 40-35-210(c) (1997 & Supp. 2002). If enhancement and mitigating factors exist, however, the trial court should enhance the minimum sentence within the range as appropriate for enhancement factors and then reduce the minimum sentence within the range as appropriate for mitigating factors. Tenn. Code Ann. § 40-35-210(e) (1997 & Supp. 2002). The weight to be afforded any particular factor is within the trial court's discretion. Tenn. Code Ann. § 40-35-210, Sentencing Commission Comments; *State v. Hayes*, 899 S.W.2d 175, 185 (Tenn. Crim. App. 1995).

The trial court concluded that the enhancement factors outweighed the mitigating factors and sentenced Defendant to nine years. The trial court also denied Defendant's request for an alternative sentence. Defendant challenges both the length of the sentence imposed and the manner of service.

A defendant who challenges his or her sentence has the burden of proving that the sentence imposed by the trial court is improper. Tenn. Code Ann. § 40-35-401(d) (1997), Sentencing Commission Comments; *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). When a defendant challenges the length, range, or manner of service of his sentence, the reviewing court conducts a *de novo* review of the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d) (1997). This presumption of correctness is conditioned upon an affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. *Ashby*, 823 S.W.2d at 169.

Defendant argues that the trial court misapplied enhancement factor (14), that the offense was committed while Defendant was on probation from a prior felony conviction. Defendant argues that no evidence was presented that his prior convictions in Kentucky would constitute felonies in the state of Tennessee. With regard to the application of that enhancement factor, the trial court stated: "[T]here's no question in my mind that third degree burglary and unlawful

taking in Kentucky are felonies and I find – and he was on probation at that time. So that enhancing factor has been met."

The record reveals that in 1998, Defendant entered guilty pleas in the Circuit Court of Letcher County, Kentucky, to "third degree burglary" and "theft by unlawful taking or disposition." Defendant was sentenced to four years probation. Copies of the Kentucky indictments and judgments were entered into evidence in this case. The indictments state that both charges are felonies. Defendant also admitted in his testimony that he was a convicted felon.

Under Kentucky law, the offense of burglary in the third degree occurs when a person, "with the intent to commit a crime, knowingly enters or remains unlawfully in a building." Ky. Rev. Stat. Ann. § 511.040 (2002). The offense is a Class D felony. *Id.* The offense of theft by unlawful taking or disposition occurs when a person "unlawfully takes or exercises control over movable property of another with intent to deprive him thereof." Ky. Rev. Stat. Ann. § 514.030 (2002). If the value of the property is $300 or more, the offense is a Class D felony. *Id.*

The elements of third degree burglary in Kentucky are essentially the same as the elements in Tennessee's burglary statute, which provides that a person who, without the effective consent of the property owner, enters or remains concealed in a building other than a habitation with the intent to commit a felony, theft or assault therein, commits burglary, which is a Class D felony. *See* Tenn. Code Ann. § 39-14-402 (1997). The elements of theft in the Kentucky statute may or may not constitute a felony in Tennessee. Tennessee's theft statute provides that "[a] person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103 (1997). If the theft is of property in an amount under $500, the offense is a Class A misdemeanor. Tenn. Code Ann. § 39-14-105(1) (1997).

Regardless of whether Defendant's theft conviction in Kentucky would be a felony in Tennessee, Defendant's burglary conviction in Kentucky clearly constitutes a felony in Tennessee. The trial court properly applied enhancement factor (14), that the felony was committed while Defendant was on probation for a prior felony conviction, Tenn. Code Ann. § 40-35-114(14)(C) (Supp. 2002).

As noted above, copies of the Kentucky indictments and judgments were entered into evidence. The indictments state on their face that both charges to which Defendant pled guilty are felonies. Defendant also admitted in his testimony that he was a convicted felon of burglary and theft in Kentucky.

Defendant also contends that the trial court misapplied enhancement factor (9), that Defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community. Tenn. Code Ann. § 40-35-114(9) (Supp. 2002). Defendant argues that there was never an adjudication of the alleged probation violation. The trial court

-4-

found that Defendant violated the conditions of his probation. The presentence report reveals that in 1999, a bench warrant was issued for probation violation in relation to Defendant's sentences for the burglary and theft convictions in Kentucky. At the time of the presentence report, "the disposition of this charge [was] unknown." Mr. Adams, Defendant's probation officer in Kentucky, testified at the sentencing hearing that Defendant absconded from probation in October of 1998 and further violated the conditions of his probation by failing to report a change in residence, failing to report as directed, and failing to pay court ordered fees. Defendant himself testified that he failed to comply with the conditions of probation. The record supports the trial court's finding. The enhancement factor does not require proof that a court has revoked a defendant's probation. It merely requires proof that the defendant has a previous history of noncompliance with conditions of a sentence involving release in the community. We conclude that enhancement factor (9) was properly applied.

Defendant also challenges the trial court's failure to apply two mitigating factors: that Defendant acted under strong provocation, Tenn. Code Ann. § 40-35-113(2) (1997); and that Defendant was motivated by a desire to provide necessities for his family or himself, Tenn. Code Ann. § 40-35-113(7) (1997). Our review of the record shows that the trial court properly declined to apply these mitigating factors. We conclude that the enhancement factors applied by the trial court are supported by the record. We further conclude that the trial court properly weighed the enhancement and mitigating factors, and Defendant's sentence of nine years is appropriate.

Defendant also argues that the trial court erred by denying alternative sentencing. An especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing in the absence of evidence to the contrary. Tenn. Code Ann. § 40-35-102(6). However, Defendant was sentenced as a Range II multiple offender. He is therefore not entitled to the presumption that he is a favorable candidate for alternative sentencing. Furthermore, Defendant is not eligible for a community corrections sentence because he was convicted of a violent felony offense. *See* Tenn. Code Ann. § 40-36-106 (1997 & Supp. 2002). Defendant is also ineligible for any probation because his sentence exceeds eight years. *See* Tenn. Code Ann. § 40-35-303(a) (1997 & Supp. 2002). The trial court's denial of an alternative sentence was not only appropriate, but required by statute.

## CONCLUSION
After a review of the record, the judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE