FILED
12/14/2023
Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 14, 2023

## STATE OF TENNESSEE v. ROBERT W. PITT, II

**Appeal from the Criminal Court for Sumner County**
**No. 2020-CR-540    Dee David Gay, Judge**

_____

### No. M2022-01730-CCA-R3-CD

_____

This appeal concerns sentencing issues only. Defendant, Robert W. Pitt, II, pleaded guilty in the Sumner County Criminal Court to five counts of statutory rape by an authority figure, involving one victim. After a sentencing hearing, the trial court sentenced Defendant to six years in confinement on each conviction and ordered the sentences to run consecutively, for an effective thirty-year sentence. Defendant argues on appeal that his sentences are excessive and that the trial court abused its discretion in ordering consecutive sentencing. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and TOM GREENHOLTZ, JJ., joined.

John D. Pellegrin, Gallatin, Tennessee, for the appellant, Robert W. Pitt, II.

Jonathan Skrmetti, Attorney General and Reporter; Caroline Weldon, Assistant Attorney General; Lawrence Ray Whitley, District Attorney General; and Tara Wyllie, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

***Factual and Procedural History***

*M.B.*[1]

Defendant married M.B.'s mother when M.B. was 11 or 12 years old. The two were married for approximately two years and had a son before they divorced in 2010 or 2011. The divorce involved a contentious custody dispute over their shared son. Though Defendant was her stepfather for only a short time, M.B. regularly went to Defendant's home after the divorce and spent the night because she felt pressure to "rais[e]" her half-brother. M.B. was "scared to leave [her half-]brother alone with [Defendant]" because she feared that "if [her half-brother] was left alone with [Defendant] something might happen."

Defendant's and M.B.'s sexual relationship began around December 2011 when she was 15 years old. Defendant provided M.B. with marijuana during her visits to his home and the two regularly smoked together. As the two smoked marijuana together one evening, Defendant told M.B. he "needed a back rub" and "was pretty insistent." M.B. complied with his request. When she finished, Defendant told her he would "repay the favor and give [M.B.] a back rub." Defendant's "hands got lower and lower until he was essentially sexually assaulting [M.B.], and then that was the first time there was any sort of sexual intercourse." M.B. felt that she could not refuse Defendant's advances.

M.B. stayed with her biological father's family in Arkansas for a period in 2012. Defendant and M.B. exchanged several phone calls during this time; however, Defendant instructed M.B. to hide their communications. M.B. disguised Defendant's contact information in her phone as a peer from school. Defendant expressed his desire to come to Arkansas to visit M.B. Despite Defendant's admonition to hide their communications, M.B. wrote of their conversations in her private journal. M.B.'s grandmother discovered the journal entries about M.B.'s conversations with Defendant. In several of the journal entries, which were admitted as an exhibit at the sentencing hearing, M.B. wrote that she loved Defendant. M.B.'s grandmother contacted the Hendersonville Police Department ("HPD") out of concern that M.B. and Defendant were engaged in an inappropriate relationship.

At one point in 2013, when M.B. was 16 or 17 years old, Defendant was in custody for a probation violation. While in custody, Defendant called M.B. several times. Defendant asked M.B. in one phone call if she remembered to take her "medicine," which M.B. understood to mean birth control pills. Defendant told M.B. he would "get in trouble" if she did not "take [her] medicine like [she] was supposed to." Defendant told M.B. that when he was released from custody, he would "stop at Taco Bell[,] . . . come home, take a shower, and then play with [M.B.]." M.B. understood this to mean "something sexual."

---

[1] It is the policy of this Court to protect the privacy of victims of sexual offenses by using their initials.

HPD Detective Jim Bachman questioned M.B. in 2013 about the nature of her relationship with Defendant. M.B. and Defendant's sexual relationship was ongoing at this time, but she did not disclose this to Detective Bachman. M.B. wanted "everyone to essentially go away and not ask [her] about it at the time." Detective Bachman recalled at the sentencing hearing that M.B.'s mother was concerned that M.B. and Defendant were engaged in an inappropriate relationship.

During his 2013 investigation, Detective Bachman spoke with Mr. Adam Druckenmiller, one of Defendant's friends, about Defendant's relationship with M.B. Mr. Druckenmiller told Detective Bachman that he did not recall "seeing anything odd at the time," but that Defendant said some things Mr. Druckenmiller considered strange, such as that "[Defendant] wanted to marry someone like [M.B.]."

M.B. also denied an inappropriate relationship with Defendant in an affidavit she executed during her mother and Defendant's custody dispute and testified in a deposition to the same effect near that time. M.B. testified at the sentencing hearing that she signed the affidavit "out of fear."

Defendant and M.B. engaged in sexual intercourse "probably hundreds" of times before M.B. turned 18 years old in April 2014. In addition to marijuana, Defendant provided M.B. with alcohol, and M.B. recalled one occasion where Defendant forced her to use cocaine so she "wouldn't be able to tell on anybody else."

Defendant was also violent toward M.B. and threatened her. Defendant "dr[ove] drunk" with M.B. in the vehicle. Defendant told M.B. that "he was going to either take the bolts out of [M.B.'s] tires or [her] mom's tires on her car and ma[k]e sure that [they] wrecked on the interstate and no one would know how it had happened and [Defendant] would be able to get away with it like that." Defendant kept weapons hidden around his home and bragged about "how he could kill people with them and the different ways that he could kill people with them."

Defendant's sexual relationship with M.B. continued until 2018, when M.B. was 22 years old. M.B. "escape[d]" from Defendant under the guise of a school trip. Sometime after M.B. escaped, Defendant tried to ram her car while she was driving.

M.B. received counseling from Christa Yandell, a licensed professional counselor in Tennessee, for approximately a year and a half beginning in 2019. Ms. Yandell recalled at the sentencing hearing that M.B. had night terrors, panic attacks, depression, suicidal ideation, and general feelings of hopelessness and anxiety stemming from the years of sexual abuse and Defendant's behavior after M.B. escaped.

*A.C.*

A.C. met Defendant in 2011 through their involvement at Hendersonville Performing Arts Center ("HPAC"). A.C. was 16 years old at that time. Defendant's mother was the director at HPAC, and though Defendant held no official role, "he felt like he ran everything" because of his mother's position, and A.C. perceived that he had authority.

Defendant asked A.C. to babysit his son in the spring of 2012. This was the only time A.C. "actually babysat" Defendant's son. Defendant later asked A.C. again if she would babysit his son, but this time, Defendant's son was not there when A.C. arrived. Defendant gave A.C. an alcoholic drink, but A.C. could not remember whether they had sexual intercourse that evening. A.C. estimated that she and Defendant had sexual intercourse three times in the course of their relationship, all occurring before A.C. was 18 years old.

Facebook messages between A.C. and Defendant were admitted at the sentencing hearing. Messages from 2013, when A.C. was 17 years old, show Defendant asking A.C. whether she had disclosed to anyone the sexual nature of their relationship.

A.C. worked with Defendant in several theatrical productions, including at a church, at a zoo, and at HPAC. A.C. recalled at the sentencing hearing, "there was, like a certain group of [girls] that [Defendant], like, brought [them] to work everywhere. So it was just a lot of abusive and aggressive behavior toward [A.C.] and the other girls, not necessarily like sexual, but just emotional and physical and that kind of behavior." A.C. specifically recalled an incident at a rehearsal where Defendant "had some kind of explosion" and got into a physical altercation with another cast member.

A.C. "got away from [Defendant]" in 2018 after M.B. came forward with her allegations. A.C. testified at the sentencing hearing that she helped M.B. get away from Defendant.

*F.N.W.*

Defendant and F.N.W. met in 2012 when F.N.W. was 16 years old. F.N.W. went with A.C. to Defendant's home "under the guise of babysitting his son," but they truly went to "hang out with" Defendant. A fourth person was in the home, as well, whom F.N.W. recognized as an acquaintance from church. Defendant gave them alcohol and marijuana. F.N.W. did not see Defendant's son that evening. F.N.W. and Defendant did not have physical contact that evening, but they exchanged phone numbers.

A week or two later, Defendant texted F.N.W. that his back hurt and that he needed a back rub. Defendant offered to come pick up F.N.W. Defendant took F.N.W. back to his home, and the two drank alcohol and smoked marijuana. Defendant progressively "[got] more flirty" with F.N.W. Defendant "pulled at the back of [F.N.W.'s] pants and asked [her] what kind of underwear that [she] was wearing." F.N.W. began to panic, and Defendant laid her on the bed "like he was trying to calm [her] down." "[T]he next thing [F.N.W.] knew, [her] clothes were being taken off . . . and [F.N.W.] kind of knew what was happening, but [she] didn't really have very much control over [her] thoughts and [her] body together" due to the marijuana and alcohol. Defendant inserted his penis into F.N.W.'s vagina. F.N.W. told Defendant that it hurt, but Defendant told her that "if [she] just kept doing it, it would feel good." F.N.W. recalled at the sentencing hearing that "it was hard to even form words at that point."

Another time, Defendant coerced F.N.W. and A.C. into having a "threesome" with him, in which Defendant performed oral sex on A.C. and penetrated F.N.W.'s vagina with his penis. F.N.W. recalled that she was 16 years old when this occurred. All told, F.N.W. and Defendant had four or five sexual encounters, all occurring before F.N.W. was 18 years old.

*Guilty Plea and Sentencing Hearing*

The Sumner County Grand Jury indicted Defendant in 2020 for six counts of statutory rape by an authority figure. All of the charges stemmed from sexual encounters with M.B. Defendant entered a guilty plea without a sentence to five of the six charges in 2022 pursuant to an agreement with the State not to pursue charges related to A.C. and F.N.W.

The trial court heard testimony at the sentencing hearing from M.B., A.C., F.N.W., Ms. Yandell, and Detective Bachman relating the above facts, as well as an allocution statement from Defendant in which he expressed his remorse. The trial court received written victim impact statements from M.B., A.C., and F.N.W., as well as letters from several friends and family members supporting Defendant.

The trial court noted that Defendant was a Range I, standard offender and that statutory rape by an authority figure was a Class C felony in 2011 when the charged crimes occurred; as such, each conviction was subject to a sentence range of three to six years. *See* T.C.A. §§ 39-13-532 (2011) (statutory rape by an authority figure); 40-35-112(a)(3) (2011) (sentencing range for Range I, Class C felony). The trial court also noted that statutory rape by an authority figure was not eligible for probation in 2011. *See id.* § 40-35-303(a) (2011).

The trial court stated that Defendant's expressions of remorse were "a day late and a dollar short." As to enhancement factors, the trial court found that there were multiple victims based on the uncharged offenses involving A.C. and F.N.W. *See* T.C.A. § 40-35-114(3). The trial court found that all three victims were especially vulnerable because of age. *See id.* § (4). The trial court found that Defendant committed these crimes to gratify his desire for pleasure or excitement. *See id.* § (7). The trial court stated that Defendant made M.B. his "sex slave" and expressed its shock that such a thing could happen in Sumner County. The trial court noted that Defendant had a long history of criminal conduct in the form of the "hundreds of times" Defendant and M.B. engaged in sexual intercourse before M.B. turned 18 and that "[e]very time [Defendant] used [marijuana or cocaine] it [was] a violation of the law." *See id.* § (1). The trial court did not find that any mitigating factors applied. The trial court sentenced Defendant to six years in confinement on each conviction.

As to consecutive or concurrent service, the trial court considered the factors outlined in Tennessee Code Annotated section 40-35-115. The trial court found that Defendant was convicted of "two or more statutory offenses involving the sexual abuse of a minor" and considered that M.B. was Defendant's stepdaughter, the nature and scope of the sexual acts, and the extent of the residual physical and mental damage to the victims. Relying on this factor, the trial court ordered Defendant's sentences to run consecutively, for an effective sentence of thirty years to serve at 30% release eligibility. The trial court stated, "[i]f there was a poster child for consecutive sentence[s], [Defendant], you are it." The trial court noted on the judgments its recommendation that Defendant not be paroled.

This timely appeal followed.

## *Analysis*

### *Length of Sentence*

Defendant argues first that his sentence is excessive, describing it as "manifestly unjust." Specifically, Defendant argues that the trial court improperly applied enhancement factor (4), that the victims were vulnerable due to their age. The State counters that the trial court properly sentenced Defendant. We agree with Defendant that the trial court improperly applied enhancement factor (4), but agree with the State that the trial court properly sentenced Defendant.

"[S]entences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). Stated differently, this Court is "bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out" in the Sentencing Act. *State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008). "'A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party.'" *State v. Gevedon*, 671 S.W.3d 537, 543 (Tenn. 2023) (quoting *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010)). The party challenging a sentence bears the burden of demonstrating its impropriety. T.C.A. § 40-35-401, Sentencing Comm'n Cmts.; *see also State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

As to enhancement factors, we note that a trial court's misapplication of an enhancement or mitigating factor does not invalidate the presumption of reasonableness, so long as the trial court articulates reasons consistent with the purposes and principles of sentencing. *Bise*, 380 S.W.3d at 705-06. Additionally, "'[t]he application of a single enhancement factor can justify an enhanced sentence.'" *State v. Rollins*, No. E2022-00890-CCA-R3-CD, 2023 WL 4078700, at *5 (Tenn. Crim. App. June 20, 2023) (quoting *State v. Banks*, No. M2019-00017-CCA-R3-CD, 2020 WL 5888, at *10 (Tenn. Crim. App. Aug. 25, 2020)), *perm. app. denied* (Tenn. Oct. 13, 2023).

As described above, Defendant pleaded guilty to five counts of statutory rape by an authority figure, which were Class C felonies in 2011 when the charged offenses occurred. *See* T.C.A. 39-13-532 (2011). The appropriate sentencing range was thus three to six years. *Id.* § 40-35-112(a)(3) (2011). The trial court sentenced Defendant to six years on each count. The sentence ordered by the trial court was within-range, which entitles it to a presumption of reasonableness. *Bise*, 380 S.W.3d at 708. We therefore will not disturb the trial court's sentencing decision unless the trial court abused its discretion in reaching it. *Id.*

Defendant complains that the trial court improperly applied enhancement factor (4), that the victims were particularly vulnerable because of age. The State characterizes the trial court's statements regarding the victims' vulnerability as a "passing description." We agree with Defendant that the trial court's reliance on this enhancement factor is more than a "passing description" of the victims. We also agree with Defendant that the trial court misapplied this enhancement factor. The record shows that the trial court focused exclusively on the victims' age in its reliance on this factor. Reliance on the victim's age alone is insufficient to support application of this enhancement factor. *State v. Poole*, 945 S.W.2d 93, 96 (Tenn. 1997). Proper application of this enhancement factor focuses on the victim's inability, because of age, to resist, summon aid, or testify against the perpetrator.

- 7 -

*See State v. Kissinger*, 922 S.W.2d 482, 487 (Tenn. 1996) (citing *State v. Hayes*, 899 S.W.2d 175, 185 (Tenn. Crim. App. 1995)).

We part ways with Defendant, though, in his belief that he is entitled to relief on this basis. The enhancement factors are advisory only, and misapplication of an enhancement factor is not enough, standing alone, to reverse a sentence. *Bise*, 380 S.W.3d at 705-06. Additionally, though Defendant does not challenge the trial court's application of enhancement factors (1), (3), and (7), there is ample evidence in the record to support the trial court's reliance on them. *See* T.C.A. § 40-35-114(1), (3), (7). The record here shows that the trial court considered all of the relevant statutory factors, the evidence, and the purposes and principles of sentencing in reaching its decision as to the length of Defendant's sentences. As a result, Defendant is not entitled to relief on this issue.

*Consecutive Service of Sentences*

Defendant also challenges the trial court's order of consecutive sentencing. The State argues that the trial court did not abuse its discretion in ordering consecutive service. We agree with the State.

Trial courts are vested with discretion as to whether to align sentences concurrently or consecutively. *State v. Pollard*, 432 S.W.3d 851, 861 (Tenn. 2013). As relevant here, trial courts may order consecutive service if "[t]he defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor[.]" T.C.A. § 40-35-115(b)(5). In applying this factor, the trial court must consider "the aggravating circumstances arising from the relationship between the defendant and the victim or victims, the time span of [the] defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims." *Id.*

Defendant pleaded guilty to five statutory offenses involving the sexual abuse of a minor. The trial court considered the relationship between Defendant and his victims, the time the sexual activity went undetected, the nature and scope of the sexual acts, and the extent of the residual effects of Defendant's crimes in the victims' lives. The trial court found that all four factors were aggravating factors under the circumstances of this case. Defendant attempts to portray his victims as "willing participant[s]" in their sexual relationships, but the trial court rejected that depiction of the relationships, as was its prerogative. The record supports its determination. Defendant also claims that the trial court should have ordered concurrent sentencing because Defendant "apparently is not one who is attracted to pre-pubescent girls," but we fail to see how this amounts to an abuse of discretion on the trial court's part. The trial court properly exercised its discretion in imposing consecutive sentences. Defendant is not entitled to relief on this issue.

## CONCLUSION

The trial court did not abuse its discretion in sentencing Defendant at the maximum of the relevant range and in imposing consecutive sentencing. The judgments of the trial court are accordingly affirmed.

_____
TIMOTHY L. EASTER, JUDGE